*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              *v.*

No. 07-6390

RICARDO PEREZ-VASQUEZ,
                    *Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 05-00086-001—J. Ronnie Greer, District Judge.

Argued: March 10, 2009

Decided and Filed: April 30, 2009[*]

Before: KETHLEDGE and WHITE, Circuit Judges; POLSTER, District Judge.[**]

———————————

## COUNSEL

**ARGUED:** Boyd Walter Venable III, LAW COMING, Sevierville, Tennessee, for
Appellant.   Robert M. Reeves, ASSISTANT UNITED STATES ATTORNEY,
Greeneville, Tennessee, for Appellee. **ON BRIEF:** Boyd Walter Venable III, LAW
COMING, Sevierville, Tennessee, for Appellant.  Nancy Stallard Harr, ASSISTANT
UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

———————————

## OPINION

———————————

WHITE, Circuit Judge.  Appellant Ricardo Perez-Vasquez pled guilty of illegally

reentering the United States, 8 U.S.C. § 1326(a), and was sentenced to 71 months in

———————————

[*] This decision was originally issued as an "unpublished decision" filed on April 30, 2009.  The
court has now designated the opinion as one recommended for full-text publication.

[**] The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio,
sitting by designation.

1

prison, to run consecutively to a state sentence yet to be completed. He challenges his sentence as creating an unwarranted disparity and seeks remand for resentencing. We **AFFIRM.**

Perez-Vasquez entered the United States sometime before March of 2003. On September 29, 2003, he was convicted in Tennessee state court of one count of aggravated burglary and one count of sexual battery, and sentenced to three years' incarceration (with 10.8 months left to serve) and three years' probation. The Government deported Perez-Vasquez to Mexico on January 20, 2004.

Perez-Vasquez reentered the United States in February 2004. He was arrested in April 2005 and charged with aggravated burglary. In July 2005 he pled guilty in Tennessee state court and was sentenced to three years' imprisonment.

The following October, a federal grand jury indicted Perez-Vasquez for reentering the United States after deportation. *See* 8 U.S.C. § 1326. In the federal proceeding, the Government filed a notice of enhancement, asserting that a conviction of reentry under 8 U.S.C. § 1326(a) would lead to an enhanced sentence under 8 U.S.C. § 1326(b)(2) because Perez-Vasquez's prior removal from the United States "was subsequent to a conviction for commission of an aggravated felony," as defined in 8 U.S.C. § 1101(a)(43).

On June 6, 2007, Perez-Vasquez entered a notice of intent to plead guilty. Two days later, the U.S. Attorney entered a Stipulation of Factual Basis and, on June 11, Perez-Vasquez entered a guilty plea without the benefit of a plea agreement.

A probation officer calculated Perez-Vasquez's advisory Guidelines range using a base offense level of eight and applying a sixteen-level enhancement for a previous deportation for a crime of violence. U.S.S.G. § 2L1.2(a) ("Base Offense Level: 8"); U.S.S.G. § 2L1.2(b)(1)(A)(ii) (sixteen level enhancement for previous deportation after a crime of violence). The probation officer also incorporated a three-level reduction for acceptance of responsibility, making the final offense level 21. Perez-Vasquez's past convictions, his status as a probationer, and the instant offense occurring less than two

years after his previous release from custody, gave Perez-Vasquez nine criminal history points, placing him in criminal history category IV. Perez-Vasquez's total offense level of 21 combined with his criminal history category IV to place him in the 57 to 71 months Guidelines range.

At the sentencing hearing, Perez-Vasquez made several arguments, two of which are relevant here. First, he argued that he would suffer an unwarranted disparity in his sentence because the Eastern District of Tennessee did not participate in an early disposition or "fast-track" program. The Attorney General authorizes districts to participate in such programs, allowing courts in those districts to provide a four-level downward departure to a defendant who makes an early guilty plea. Second, he argued that his sentence for illegal reentry should be ordered to run concurrently with his undischarged state-court sentence for aggravated burglary. *See* U.S.S.G. § 5G1.3(c) ("[T]he sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment [in any other case] to achieve a reasonable punishment for the instant offense.").

The district court sentenced Perez-Vasquez to 71 months in prison, and ordered that the sentence run consecutively to his state sentence for aggravated burglary. The court found that the sentence did not create an unwarranted disparity because Perez-Vasquez's prior conviction would have made him ineligible for fast-track treatment. The court noted its discretion to order that the sentence run concurrently with the undischarged state sentence, but concluded that the "totally unrelated" nature of the state and federal crimes made a consecutive sentence more appropriate.

Appellate review of a sentencing decision is limited to determining whether the sentence is reasonable under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007); *see also United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). The review is two tiered: the court must review for both procedural and substantive error. *Gall*, 552 U.S. at ____, 128 S. Ct. at 597. We review a district court's decision to impose a consecutive or concurrent sentence under § 5G1.3 of the Sentencing Guidelines for abuse of discretion. *United States v. Campbell*, 309 F.3d 928,

930 (6th Cir. 2002).  In this circuit, a sentence that falls within the Guidelines enjoys "a rebuttable presumption of reasonableness." *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).  Nevertheless, a sentencing court must still "explain to the parties and the reviewing court its reasons for imposing a particular sentence." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006).

On appeal, Perez-Vasquez argues that early disposition – or "fast-track" – programs create an unwarranted disparity in sentences, implicating 18 U.S.C. § 3553(a)(6) (instructing sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").  He argues that the district court should have ordered a concurrent sentence as a means of reducing the disparity.

Fast-track programs began in the 1980s as a  result of prosecutors' efforts to enforce criminal immigration laws in the face of dockets flooded with violations.  Such programs expedited illegal reentry cases by, for example, allowing a defendant "otherwise potentially chargeable under 8 U.S.C. § 1326(b)" to "plead guilty to a violation of 8 U.S.C. § 1326(a), which carries a maximum term of two years." *United States v. Bonnet-Grullon*, 53 F. Supp. 2d 430, 432 (S.D.N.Y. 1999) (quoting Alan D. Bersin and Judith S. Feigin, *The Rule of Law at the Margin:  Reinventing Prosecution Policy in the Southern District of California*, 12 Geo. Immig. L. J. 285, 287, 301 (1998)); *see also United States v. Hernandez-Cervantes*, 161 F. App'x 508, 510 (6th Cir. 2005) (unpublished disposition) (explaining that prosecutors in border areas used fast-track programs "to clear their dockets through either charge-bargaining or agreements to move for downward departures in return for defendants' agreements not to file pretrial motions or contest issues").

Congress approved of these procedures in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (the PROTECT Act), which called upon the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by

the Attorney General and the United States Attorney."  Pub. L. 108-21, § 401(m), 117 Stat. 650, 675 (2003).  The ensuing guideline, U.S.S.G. § 5K3.1, provides that "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."

Defendants in districts without fast-track programs have long claimed that the limited application of these departures creates an unwarranted sentence disparity under 18 U.S.C. § 3553(a)(6).  To eliminate the disparity, these defendants argue that sentencing courts in districts without fast-track programs must consider a parallel departure for defendants who would receive the benefit of a § 5K3.1 departure if prosecuted in another district.  *See Bonnet-Grullon*, 53 F. Supp. 2d at 435 ("[I]t is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested.").  These arguments gained strength in the wake of *Booker*, but did not achieve their intended result of mandating a parallel departure.  *See United States v. Booker*, 543 U.S. 220, 245 (2005) (requiring that courts "consider Guidelines ranges," but permitting them to "tailor the sentence in light of other statutory concerns as well"); *United States v. Galvez-Barrios*, 355 F. Supp. 2d 958, 963 (E.D. Wis. 2005) ("[U]nder *Booker* and § 3553(a)(6), it may be appropriate in some cases for courts to exercise their discretion to minimize the sentencing disparity that fast-track programs create.").  Instead, courts of appeals have generally declined to require a downward departure based on a defendant's claimed eligibility for a fast-track program in another district.  *See, e.g.*, *United States v. Hernandez-Fierros*, 453 F.3d 309, 314 (6th Cir. 2006).[1]  Some courts reasoned that the difference in sentences across districts did not amount to a disparity

---

[1] *See also United States v. Jimenez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006) (upholding the lower court's denial of a below-Guidelines sentence and noting that such a downward departure might not even be permissible); *United States v. Montes-Pineda*, 445 F.3d 375, 379-80 (4th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539, 543 (7th Cir. 2006) ("That some courts have chosen to avoid disparity does not mean that all district courts are compelled to adjust a sentence downward from the advisory guidelines range in order for that sentence to be reasonable."); *United States v. Sebastian*, 436 F.3d 913, 916 (8th Cir. 2006); *United States v. Marcial-Santiago*, 447 F.3d 715, 718 (9th Cir. 2006).  *But cf. United States v. Morales-Chaires*, 430 F.3d 1124, 1131 (10th Cir. 2005) (noting that it need not resolve the issue, and holding, based on the other § 3553(a) factors, that the Guidelines sentence was reasonable).

because Congress, by endorsing fast-track programs in the PROTECT Act, "was necessarily providing that the sentencing disparities that result from these programs are warranted and, as such, do not violate § 3553(a)(6)." *United States v. Marcial-Santiago*, 447 F.3d 715, 718 (9th Cir. 2006). The Sixth Circuit reached a similar conclusion, holding that "fast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts" and, therefore, the resultant disparity "does not run counter to § 3553(a)'s instruction to avoid unnecessary sentencing disparities." *Hernandez-Fierros*, 453 F.3d at 314. ("In so balancing the 18 U.S.C. § 3553(a) factors, the court appropriately addressed defendant's sentencing disparity concerns").

Under 18 U.S.C. § 3584, "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." The code instructs a court making such a decision to "consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." *Id.* Section 3553(a) instructs the court to consider a list of seven factors when determining a sentence. These factors include, "the nature and circumstances of the offense and the history and characteristics of the defendant," the need to "protect the public from further crimes of the defendant," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1), (2), & (6).[2]

---

[2]The seven 18 U.S.C. § 3553(a) factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the Guidelines sentence; (5) any pertinent policy statement issued by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense."

The Guidelines also provide some instruction on consecutive versus concurrent sentencing. Under these facts, § 5G1.3 explains that a court may impose a sentence that runs "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). The commentary also provides a note regarding the application of subsection (c), which includes specific factors the court should consider.[3] U.S. Sentencing Guidelines Manual § 5G1.3 cmt. n.3 (2007). Nevertheless, "where a district court has considered the factors listed in 18 U.S.C. § 3553(a) and the applicable Guidelines and policy statements in effect at the time of sentencing, the district court's decision whether to impose a concurrent or consecutive sentence pursuant to § 5G1.3 is discretionary." *United States v. Watford*, 468 F.3d 891, 916 (6th Cir. 2006); *see also United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999) (noting no "requirement that a district court make specific findings relating to each of the factors considered").

Perez-Vasquez does not assert that the district court failed to consider the appropriate factors. Rather, he asserts that the court abused its discretion in declining to order that the federal sentence run concurrently with his undischarged state sentence under the circumstance that he was not eligible for fast-track treatment due to the district in which he was prosecuted. This argument, however, runs contrary to the law in this and other circuits. While the district court was free to consider this as a factor in both fashioning a sentence and deciding whether it should run consecutively or concurrently,

---

[3]The commentary explains:

(A) In General.–Under subsection (c), the court may impose a sentence concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment. In order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity, the court should consider the following:
(i) The factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
(ii) The type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
(iii) The time served on the undischarged sentence and the time likely to be served before release;
(iv) The fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
(v) Any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S. Sentencing Guidelines Manual § 5G1.3 cmt. n.3 (2007).

it was not obliged to impose a concurrent sentence simply because the district did not have a fast-track program.

We **AFFIRM** the district court's sentence.