**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0234n.06**

**No. 08-2416**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Apr 15, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| SALVADOR HERNANDEZ CORDOVA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Salvador Hernandez Cordova pled guilty to unlawful reentry after deportation after an aggravated felony in violation of 8 U.S.C. § 1326. His Guideline range was 77-96 months, and the district court sentenced Hernandez Cordova to 96 months' imprisonment. He now appeals, arguing that he was entitled to a variance because the Eastern District of Michigan does not offer a "fast-track" program and asserting that his sentence violates the Eighth Amendment. This court's precedent rejects the first of these contentions, and Hernandez Cordova's Eighth Amendment argument fails because he does not argue, and he cannot show, that his sentence is grossly disproportionate to his offense.

Salvador Hernandez Cordova was born in 1972 in Juarez, Mexico. He entered the United States illegally in 1992 and committed a number of crimes in the United States before being deported to Mexico as an aggravated felon in 2005. Hernandez Cordova's convictions while in the United

States included a burglary of a former employer, numerous offenses related to car theft, and a second-degree home invasion in 2002. After being deported, Hernandez Cordova returned to the United States illegally in 2005, committed additional crimes, and served time in a Michigan prison. Upon a planned release from state prison, Hernandez Cordova was taken into custody by Immigration and Customs Enforcement agents and indicted for unlawful reentry after deportation after an aggravated felony in violation of 8 U.S.C. § 1326.

Hernandez Cordova pled guilty on July 14, 2008. Using the 2007 edition of the Guidelines, the Presentence Investigation Report (PSR) computed Hernandez Cordova's base offense level as 8. *See* U.S.S.G. § 2L1.2(a). Because Hernandez Cordova had been deported after having committed a felony crime of violence—his 2002 home invasion—his offense level was increased by 16 points. *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii). After a three-point reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, Hernandez Cordova's total offense level was 21. Under Hernandez Cordova's criminal history category of VI, the Guideline range was 77-96 months. Neither party objected to the PSR. Hernandez Cordova filed a sentencing memorandum that sought a downward variance on a number of grounds, including the unavailability of a fast-track program in the Eastern District of Michigan. The Government requested a within-Guideline sentence. The Government argued that the court should weigh the fast-track disparity argument "against the extensive criminal history of the defendant as well as the different problems faced in the southwestern states and decline to exercise its discretion in the manner requested by the defendant." The district court sentenced Hernandez Cordova to 96 months' imprisonment. In explaining this sentence, the district court

emphasized Hernandez Cordova's extensive criminal history and his failure to abide by a previous commitment to reform his life. At no point did the district court indicate that it could not vary based on the so-called fast-track disparity. Hernandez Cordova now appeals, arguing that the district court ought to have granted a variance based on the unavailability of a fast-track program and that his sentence violates the Eighth Amendment.

At most, district judges are allowed to vary downward to account for a jurisdiction's lack of a fast-track program; district judges are certainly not required to do so. "Fast-track," or early disposition, programs

> popped up spontaneously in federal district courts along the border between the United States and Mexico as part of an effort to manage burgeoning immigration caseloads. Typically, prosecutors would use charge-bargaining or plea-bargaining techniques to hold out the prospect of shorter sentences in return for prompt guilty pleas and waivers of appellate rights. Congress placed its imprimatur on this paradigm in 2003, authorizing the Attorney General to create early disposition programs on a district-by-district basis throughout the country and directing the Sentencing Commission to promulgate a policy statement allowing downward departures in affected cases.

*United States v. Rodriguez*, 527 F.3d 221, 223 (1st Cir. 2008) (citing Prosecutorial Remedies and Other Tools To End the Exploitation of Children Today (PROTECT) Act, Pub. L. No. 108-21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003)) (other citations omitted). Because fast-track programs are only available in certain jurisdictions, Hernandez Cordova argues that they create an unwarranted disparity and thus should be the basis for downward variances. There is some dispute in other circuits regarding whether district courts have the power to grant variances on this basis in light of *Kimbrough v. United States*, 552 U.S. 85 (2007). *Compare United States v. Arrelucea-Zamudio*, 581

F.3d 142, 149 (3d Cir. 2009) (holding that district courts do have such power), *and Rodriguez*, 527 F.3d at 227 (same), *with United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740 (9th Cir. 2009) (holding that district courts do not have such power because disparities resulting from fast-track programs are the result of congressional policy), *United States v. Vega-Castillo*, 540 F.3d 1235, 1239 (11th Cir. 2008) (same), *and United States v. Gomez-Herrera*, 523 F.3d 554, 562 (5th Cir. 2008) (same).

We need not reach this issue because regardless of whether district courts are permitted to vary based on the fast-track disparity, district courts are certainly not required to do so. *United States v. Hernandez-Fierros*, 453 F.3d 309, 314 (6th Cir. 2006); *see also United States v. Perez-Vasquez*, 570 F.3d 692, 696 (6th Cir. 2009) (reaffirming *Hernandez-Fierros* post-*Kimbrough*). This circuit has previously explained that "fast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts" and the fast-track program therefore "does not run counter to § 3553(a)'s instruction to avoid unnecessary sentencing disparities." *Hernandez-Fierros*, 453 F.3d at 314. Hernandez Cordova does not present any argument as to why a fast-track variance is required in his case in particular. Therefore, our clear precedent that such variances are not required in every case is a sufficient basis on which to reject his argument that he was entitled to such a variance.

Hernandez Cordova's 96-month sentence does not violate the Eighth Amendment because (1) he committed a home invasion, which is clearly a crime of violence, (2) comparative proportionality is not required by the Constitution, and (3) his sentence is not grossly

disproportionate. Hernandez Cordova was subject to a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because of his 2002 conviction for second-degree home invasion in Michigan. Michigan second-degree home invasion is a crime of violence. *United States v. Howard*, 327 F. App'x 573, 575 (6th Cir. 2009). Hernandez Cordova's argument that the 16-level enhancement imposed in his case was not warranted by his 1994 burglary conviction is factually incorrect, as the basis for the enhancement was his 2002 conviction for home invasion. Further, even if applied to the correct facts, Hernandez Cordova's argument that his sentence is unconstitutionally disproportionate when compared to sentences for murders and rapists is foreclosed by our precedents. "[C]omparative proportionality is not mandated by the Constitution." *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003).

Finally, even if this court were to apply the requested comparison under the Eighth Amendment, Hernandez Cordova is not entitled to relief. The Sixth Circuit has "adopted the 'narrow proportionality principle' articulated in Justice Kennedy's opinion in *Harmelin v. Michigan*, 501 U.S. 957, 996-1009 (1991) (Kennedy, J., concurring)." *United States v. Jones*, 569 F.3d 569, 574 (6th Cir. 2009). Under this standard, "the [E]ighth [A]mendment is offended only by an extreme disparity between crime and sentence." *Id.* at 573 (quoting *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991)). This court has previously held that a defendant's 57-month sentence after his conviction under 8 U.S.C. § 1326 was not grossly disproportionate. *United States v. Olan-Navarro*, 350 F.3d 551, 555 (6th Cir. 2003). The defendant in *Olan-Navarro* had the same total offense level of 21 (for the same reasons), but had a lower criminal history category of IV; his 57-month sentence

was the minimum of his 57-71 month Guideline range. *Id.* at 554 & n.4. Two other circuits have approved 100-month sentences under 8 U.S.C. § 1326. *United States v. Cupa-Guillen*, 34 F.3d 860, 862 n.1, 865 (9th Cir. 1994) (defendant had a total offense level of 24, a criminal history category of VI, and a Guideline range of 100-125 months); *United States v. Cardenas-Alvarez*, 987 F.2d 1129, 1131, 1134 (5th Cir. 1993) (same). Given these precedents and this court's rule that "[a] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment,'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)), Hernandez Cordova's sentence does not violate the Eighth Amendment.

We therefore **AFFIRM** the judgment of the district court.