GRIFFIN, Circuit Judge.
Defendant Joaquin Lafarga challenges the procedural and substantive reasonableness of his within-Guidelines sentence of seventy-seven months of imprisonment imposed following his plea of guilty to one count of unlawful reentry after deportation after an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). We affirm.
I.
Defendant Lafarga was arrested on May 30, 2008, following a routine stop for a traffic violation in Louisville, Kentucky, when officers ascertained that Lafarga, a Mexican national, had been deported in April 2005 and that he had a criminal record. Nothing in the computer check indicated that Lafarga had obtained permission from the Secretary of the Department of Homeland Security to re-enter the United States. In fact, Lafarga has been deported from this country on three occasions: in January 1995, December 1996, and April 2005. His criminal history includes two 1980 felony convictions in California for assault by means of force likely to produce great bodily injury and assault with a deadly weapon; four California misdemeanor convictions stemming from arrests in 1984, 1985, 1986, and 1987 for illegal possession or use of controlled substances; 1994 felony convictions for counterfeiting access cards and possession of a *259 firearm by a felon; in 1995, six felony counts of credit card theft with intent to defraud; a 1997 Colorado felony conviction for possession of methamphetamine; and, 1997 felony convictions in Colorado for vehicular eluding and being a habitual criminal.
Lafarga was indicted on one count of unlawful reentry after deportation after an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On February 11, 2009, he entered a guilty plea, without a plea agreement, to the charge.
The Presentence Investigation Report (“PSR”), which was adopted in full by the district court, increased Lafarga’s base offense level of 8 to an adjusted offense level of 24 pursuant to U.S.S.G. § 2L1.2(b)(l)(A)(ii) (2008), which provides that
[i]f the defendant previously was deported, or unlawfully remained in the United States, after — (A) a conviction for a felony that is ... (ii) a crime of violence; ... increase by 16 levels[.]
This enhancement was triggered by Lafarga’s 1980 felony assault convictions. The adjusted offense level was reduced by 3 levels for acceptance of responsibility and thus produced a total offense level of 21. With a criminal history category of VI, the resultant advisory Guidelines range was 77 to 96 months of imprisonment. Neither party objected to the determination of the offense level and criminal history category.
At the sentencing hearing held on May 11, 2009, defense counsel moved for a downward variance and urged the court to impose a maximum sentence of 33 months, based upon three grounds: (1) the remoteness of the 1980 felony assault convictions used to enhance Lafarga’s sentence; (2) the sentencing disparity created by the fact that Lafarga’s prosecution under 8 U.S.C. § 1326 would have been “fast tracked” in other federal jurisdictions, resulting in a more lenient sentence;[1] and (3) Lafarga’s family circumstances, including his children’s status as United States citizens and his son’s service in the United States Army. The district court, however, denied the motion and sentenced Lafarga at the bottom of the recommended Guidelines range to 77 months of incarceration, to be followed by a three-year term of supervised release. Lafarga now timely appeals his sentence.
II.
Lafarga first contends that, although there is no dispute that the Guidelines were correctly calculated and the district court appropriately considered them to be advisory, the court “paid only lip service to consideration of the factors listed in 18 U.S.C. § 3553(a)” and, therefore, his sentence is procedurally unreasonable. Specifically, Lafarga maintains that the court did not address his primary arguments for a below-Guidelines sentence, namely, the disparity presented by “fast-track” sentencing and his family situation.
“ ‘Courts of appeals must review all sentences [for reasonableness] ... under a deferential abuse-of-discretion standard.’ ” United States v. Wallace, 597 F.3d 794, 802 (6th Cir.2010) (quoting Gall v. United States, 552 U.S. 38, 41, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). “Where a party has failed to object to a procedural defect, we review claims of procedural unreasonableness for plain error.” Wallace, 597 F.3d at *260 802 (citing United States v. Vonner, 516 F.3d 382, 385-86 (6th Cir.2008) (en banc)). Lafarga, in response to the district court’s Bostic[2] inquiry, did not object to any procedural deficiencies at the sentencing hearing; consequently, we will apply the plain-error standard to his procedural challenge. See United States v. Haj-Hamed, 549 F.3d 1020, 1024 (6th Cir.2008) (holding that plain error review is appropriate where “[although [the defendant] raises on appeal the same substantive arguments for a lower sentence that he presented to the district court, he did not argue below that the district court had made any procedural errors during sentencing.”). “To show plain error, a defendant must show (1) error (2) that was obvious or clear, (3) that affected defendant’s substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.” Wallace, 597 F.3d at 802. A finding of plain error is warranted only in “exceptional circumstances,” that is, “where the error is so plain that the trial judge ... [was] derelict in countenancing it.” Vonner, 516 F.3d at 386 (citation and internal quotation marks omitted).
We must “ ‘ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.’ ” Haj-Hamed, 549 F.3d at 1023-24 (quoting Gall, 552 U.S. at 51, 128 S.Ct. 586). A district court “need not recite the[ ] [§ 3553(a) ] factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review.” Hernandez-Fierros, 453 F.3d at 312 (citation and internal quotation marks omitted). ‘When a district court adequately explains why it imposed a particular sentence, especially one within the advisory Guidelines range, we do not further require that it exhaustively explain the obverse — why an alternative sentence was not selected — in every instance.” United States v. Gale, 468 F.3d 929, 940 (6th Cir.2006); see also Wallace, 597 F.3d at 804 (“It is well-settled that a district judge need not give the reasons for rejecting any and all arguments by the parties for alternative sentences, nor must [he] give the specific reason for a within-guidelines sentence.”) (citation and internal quotation marks omitted). “[T]he crucial question is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant’s circumstances and took them into account in sentencing him.” Wallace, 597 F.3d at 804 (citations and internal quotation marks omitted).
We find no procedural deficiencies in the present sentencing record that rise to the level of plain error. Although the district court did not expressly address all of Lafarga’s arguments for a downward variance — in particular, the issue of a sentencing disparity — it is evident that the court carefully considered Lafarga’s request, and the government’s response that a downward departure would be inappropriate in light of Lafarga’s extensive criminal history, before imposing the sentence. The court acknowledged on the record that it had read defense counsel’s sentencing memorandum but, after listening to a reiteration of these same arguments at the hearing, it simply was not persuaded to grant a variance:
*261 I’ve looked at this. If it was simply a case of whatever his criminal history— his offense level was and then basically no other offenses and we were reaching back to 1980, then it would be sort of all on one side of the ledger, so to speak. Looking at this whole case, it seems to be mixed at best for him. To be sure, we are going back to 1980 on this offense that significantly raises his offense level, but that’s specifically allowed [by U.S.S.G. § 2L1.2(b)(l)(A)(ii) ]. I think I could find a way around that, but I mean, he has a significant record in addition to that, and that was the other question I had. He’s not really being penalized in the direct sentencing for the fact that this is the third time, and even though ... the other crimes he’s been convicted of, even though independently they don’t result in the same consequence, that is, increasing his sentence directly by operation of the sentencing guidelines, they are pretty significant. Here’s a guy who is repeatedly coming into the country uninvited ... and then committing crimes, and not sort of incidental crimes, some of them ... are pretty serious.
* * *
I read [defendant’s sentencing] memorandum, and I understand all that. I just think that given his — it’s true that none of the other crimes specifically fit into that category, but they are still— some of them are pretty serious. Some of them are admittedly minor and don’t affect the sentencing, but some of them are very serious, and he’s going to be deported anyway. The fact that he has relatives here is not a consequence one way or another. I don’t think we can avoid the fact he’s going to be sent back. Maybe a delay could work to his benefit actually. I know he probably won’t look at it that way.
But given all the factors, I’m going to deny the motion. I think the equities don’t weigh in his favor when looking at the total situation.
After Lafarga addressed the court and discussed his goal of becoming an artist, his depression, his family situation, and his life in Mexico, the court responded:
I understand that, Mr. Lafarga. You’ll have to figure out how to pursue that [work as an artist] in Mexico. It’s a difficult situation, but I think you understand you’ve come into the country illegally numerous times and have then committed crimes, and that puts you into a difficult position with the Court in being able to deal with your situation in a way that would be — give you other opportunities and be more lenient. That’s just the reality of your circumstances.
The court ultimately imposed the sentence of 77 months after noting that “I have considered the advisory guidelines and 18 [U.S.C. § ]3553(a).” The court added, “For all of the reasons previously stated on the record, the Court finds that the sentence is ... within the guideline range, and meets all other sentencing objectives.” While the dissent relies extensively, and nearly exclusively, on Wallace, the present case is factually distinguishable. Here, unlike Wallace, the district judge during the sentencing proceedings referenced defendant’s sentencing memorandum that expressly analyzed, inter alia, the fast-track issue, but rejected defendant’s arguments. Thereafter, the district court imposed a within-Guidelines sentence of 77 months. For the present case, the authority most instructive regarding whether plain error occurred is United States v. Vonner.
In Vonner, our en banc court held that when a sentencing court imposes a within-Guidelines sentence, its failure to explain its rejection of a straightforward, nonfrivo *262 lous leniency argument does not amount to plain error:
At the sentencing hearing, Vonner asked for a downward variance on four grounds: (1) his “neglect[ed]” and “abusfive]” childhood; (2) his 14-month presentence confinement; (3) his “assistance to the Government”; and (4) the circumstances surrounding his cocaine sales. The court told Vonner, among other things, that it “appreciate[d] the apology [he] offered this morning,” and it “encouraged” him to continue to cooperate with the government and to dedicate his prison time to learning “certain life skills and lifestyles that will be of benefit to [him] when [his] period of incarceration is over.” It then said that it had “considered the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory Guidelines range, as well as the other factors listed in 18 [U.S.C. § ]3553(a),” and imposed a 117-month sentence.
No one would call this explanation ideal. It did not specifically address all of Vonner’s arguments for leniency, and it thus failed to ensure that the defendant, the public and, if necessary, the court of appeals understood why the trial court picked the sentence it did. Whether through an oral sentencing decision or a written sentencing memorandum, a trial court would do well to say more — not because it necessarily must on pain of reversal but because a court is more likely to advance the goals of sentencing if it clearly explains to the defendant why the court denied his request for leniency. See Rita, v. United States, [551 U.S. 338, 357, 127 S.Ct. 2456, 168 L.Ed.2d 203] (2007) (“[0]ften at sentencing a judge will speak at length to a defendant, and this practice may indeed serve a salutary purpose.”). A district court’s thorough explanation also “can provide relevant information to both the court of appeals and ultimately to the Sentencing Commission,” which will facilitate appellate review and will “help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw.” Id. at 2469.
Whether the court’s brief explanation for this sentence sufficed or not, any potential error was not “plain.” Although Congress requires a court to give “the reasons” for its sentence, 18 U.S.C. § 3553(c), it does not say that courts must give the reasons for rejecting any and all arguments by the parties for alternative sentences. The statute also distinguishes between within-guidelines sentences like this one and outside-guidelines sentences, requiring judges to give “the specific reason” for imposing an outside-guidelines sentence, 18 U.S.C. § 3553(c)(2), but imposing no similar requirement for within-guidelines sentences [under § 3553(c)(1) ].
Vonner, 516 F.3d at 386-87 (emphasis added) (first and second alterations in original, third alteration added).
Here, the court was clearly aware of its authority to depart downward but declined to do so. On the basis of this record, Lafarga’s procedural challenge is without merit.
III.
“If procedurally sound, we then review the sentence for substantive reasonableness under an abuse-of-discretion standard.” Haj-Hamed, 549 F.3d at 1024. “[A] sentence is substantively unreasonable if it is selected arbitrarily, if it is based on impermissible factors, if it fails to consider a relevant sentencing factor, or if it gives an unreasonable amount of weight to any pertinent factor.” United States v. *263 Rosenbaum, 585 F.3d 259, 267 (6th Cir.2009). “[A] sentence within a properly calculated Guidelines range is presumed to be reasonable.” Id.
Lafarga maintains that his sentence is substantively unreasonable because the district court accorded undue weight to his remote 1980 assault convictions that triggered the 16-level Guidelines enhancement. He also argues that his criminal history category overstates the seriousness of his criminal record, characterizing several of his prior convictions as “too remote” and “not on a par with the assault convietion[s] in terms of violence.”
“[I]n appropriate cases ... a district court may conclude that the criminal history category overstates the severity of the defendant’s criminal history or that a lower sentence would still comply with and serve the mandates of section 3553(a).” United States v. Collington, 461 F.3d 805, 808-09 (6th Cir.2006) (citation and internal quotation marks omitted). In such circumstances, “a district court may look beneath the specific criminal history score and advisory guideline calculation to reach the appropriate sentence.” Id. at 809 (citation and internal quotation marks omitted).
This is certainly not the case here. The district court did not give unreasonable weight to Lafarga’s 1980 convictions; it simply applied the relevant Guideline, U.S.S.G. § 2L1.2(b)(l)(A)(ii), affected by the convictions. Indeed, given Lafarga’s extensive and serious prior record and his repeated deportations, the court would have been remiss if it had downplayed the significance of Lafarga’s criminal history.
To the extent Lafarga contends that the district court did not give sufficient weight to his grounds for a downward variance, this, too, implicates the substantive reasonableness of his sentence. Haj-Hamed, 549 F.3d at 1025.
“Courts are discouraged from reducing a defendant’s sentence ■ based on family circumstances unless those circumstances rise to the level of ‘exceptional.’ ” Id. at 1027 (quoting U.S.S.G. § 5H1.6). “[Ajn appellate court should generally defer to the ‘special competence’ of the district court in determining whether family circumstances are so extraordinary as to justify a departure or a variance from a Guidelines sentence.” Id. at 1028. The district court did not abuse its discretion in finding that Lafarga’s family circumstances were unexceptional and did not provide a ground for mitigation.
Moreover, “[ujnder 18 U.S.C. § 3553(a), the need to avoid sentencing disparity is only one of the factors that a district court should consider in determining an appropriate sentence.” Hemandez-Fierros, 453 F.3d at 313. The present circumstances are analogous to those in United States v. Cordova, 373 Fed.Appx. 549 (6th Cir.2010), in which we explained:
[R]egardless of whether district courts are permitted to vary based on the fast-track disparity, district courts are certainly not required to do so. United States v. Hernandez-Fierros, 453 F.3d 309, 314 (6th Cir.2006); see also United States v. Perez-Vasquez, 570 F.3d 692, 696 (6th Cir.2009) (reaffirming Hernandez-Fierros post-Kimbrough [v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)]). This circuit has previously explained that “fast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts” and the fast-track program therefore “does not run counter to § 3553(a)’s instruction to avoid unnecessary sentencing disparities.” Hernandez-Fierros, 453 F.3d at 314. [Defendant] does not present any *264 argument as to why fast-track variance is required in his case in particular. Therefore, our clear precedent that such variances are not required in every case is a sufficient basis on which to reject his argument that he was entitled to such a variance.
Cordova, 373 Fed.Appx. at 551.
Here, the district court “did not ignore the factors [Lafarga] complains did not receive enough emphasis; it merely weighed them against the other listed factors and sentenced [Lafarga] accordingly.” United States v. Lay, 583 F.3d 436, 450 (6th Cir.2009). Lafarga fails to overcome the presumption of reasonableness afforded his within-Guidelines sentence. We therefore conclude that the district court did not abuse its discretion in sentencing Lafarga.
IV.
For the foregoing reasons, we affirm Lafarga’s sentence.

. See generally, United States v. HernandezFierros, 453 F.3d 309, 313-14 (6th Cir.2006) (discussing the issue of fast-track sentencing disparity); United States v. Carballo-Arguelles, 267 Fed.Appx. 416, 420 (6th Cir.2008) (unpublished); United States v. Saavedra-Ibanez, 247 Fed.Appx. 724, 729 (6th Cir.2007) (unpublished).

. United States v. Bostic, 371 F.3d 865, 872-73 (6th Cir.2004).