NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0049n.06

No. 11-5095

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jan 13, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Jesus Valles-Renteria, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:     MOORE, CLAY, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.**  Defendant-Appellant Jesus Valles-Renteria ("Defendant"), a Mexican citizen,  pleaded guilty to one count of reentering the United States as a deported alien in violation of 8 U.S.C. §1326(a)(2) and (b)(2).  At sentencing, the district court denied Defendant's request for a downward departure based on cultural assimilation pursuant to U.S.S.G. § 2L1.2. Defendant now appeals his within-Guidelines sentence for procedural and substantive unreasonableness.  We **AFFIRM**.

## I.  BACKGROUND

Defendant was arrested for disorderly conduct and resisting arrest in Shelby County, Tennessee on April 13, 2010.  (PSR ¶ 5.)  The Shelby County Sheriff's Office alerted Immigration and Customs Enforcement ("ICE") to Defendant's arrest, and he was subsequently taken into ICE custody.  (*Id.* ¶ 6.)  During ICE processing, Defendant admitted to illegally reentering the United

States without permission or inspection after being once removed and twice deported, in 2001, 2002, and 2006, respectively. (*Id.*)

After the Defendant pleaded guilty to a superseding indictment charging him with one count of illegally reentering the United States in violation of 8 U.S.C. § 1326, the district court ordered a Presentence Investigation Report ("PSR"). The PSR indicated that Defendant was a known gang member with a criminal history that included three felony convictions, a drug offense and numerous theft convictions. (*Id.* ¶¶ 7-8). The PSR also revealed that Defendant had a habit of "resisting official detention." (*Id.* ¶ 27; *see also* ¶¶ 5, 30, 37.) Further, Defendant had illegally reentered the United States a total of three times after removal or deportation. (*Id.* ¶¶ 43-45.) Based on this record, the PSR assigned Defendant a total offense level of 21, criminal history category VI, yielding an advisory guideline range of 77 to 96 months. (*Id.* ¶¶ 68-69.)

Prior to sentencing, Defendant conceded that the factual statements and guideline calculations in the PSR were correct. (R. 36, Position Regarding Presentence Report, p.1.) At the same time, Defendant made a motion for downward departure based on cultural assimilation pursuant to a 2010 Amendment to U.S.S.G. § 2L1.2. (*Id.*; *see also* U.S.S.G. § 2L1.2, Application Note 8). Defendant asserted his eligibility for the downward departure as follows:

> As noted in the PSR, the defendant first entered the United States from Mexico at age 12. He has learned to speak English and has worked in America for most of the last sixteen years. One of his two children was born in the United States. Further, numerous family members currently reside in the United States. Certainly, this court is familiar with the fact that the defendant has been previously deported. However, the defendant is now aware that his past crimes in the United States leads [sic] to severe punishment. As such, he does not desire to return to America once he serves his sentence. Based on the aforementioned, Mr. Valles-Renteria respectfully requests this Court to consider a downward departure.

*Id.* at 2.

At sentencing, Defendant again urged the district court to grant him a downward departure based on cultural assimilation. (*See* R.41, Notice of Filing of Official Transcript.) Defendant's counsel explained:

> I know Your Honor is going to be concerned that if you give him a break, he's just going to come right back. I don't believe that's the case. Because even if Your Honor gives him a small break, I don't think he's going to come back because he is now very aware of the extreme punishment that someone like him faces under the guidelines. I'm not going to ask for a specific departure. I'm going to leave that to Your Honor's discretion if you choose to do that . . . . I think there is a little leeway for a small departure and yet you will still be able to send a message.

*Id.* at 9-10. Defendant then offered an allocution. Defendant stated that he was aware that his conduct was wrong "but [he] just came back to come home." *Id.* at 11. Defendant further stated that "[he didn't] have absolutely anything in Mexico." *Id.*

The district court then considered Defendant's motion for a downward departure under the new cultural assimilation guidelines. *Id.* The district court first observed that Defendant, unlike individuals who come to the United States as young children with little connection to their country of origin, did not come to the United States until the age of 12.[1] *Id.* Next, the district court noted that, although Defendant received two months of education in the United States and could speak some English, PSR ¶ 49, Defendant was also educated in Mexico and that he reads and writes in Spanish. *Id.* at 11-12. The district court then weighed Defendant's lengthy residence in the United

---

[1] Although both the district court and defense counsel indicated that Defendant was 12 when he first entered the United States, the PSR provides that Defendant first came to the United States at the age of 13. *See* PSR ¶ 49.

States in Defendant's favor. *Id.* at 12. Next, the district court found that Defendant's family and cultural ties were a wash because Defendant had family both in the United States and in Mexico. *Id.* Finally, the district court evaluated Defendant's "serious criminal history which works against any departure under this particular guideline." *Id.* The district court reasoned:

> [Defendant] engaged in criminal history after illegally reentering the United States, and that is a very important factor because that is an indication that the initial deportation had little effect in terms of conforming the individual's conduct to the laws of the United States. So overall in this case, this is not a good case for a departure for cultural assimilation.

*Id.* at 12-13.

The district court then offered a detailed examination of Defendant's offense conduct, his criminal history, and his personal background, *Id.* at 13-21, "because it is very important both in the analysis under 2L1.2, Note 8, and also in connection with the analysis under 18 U.S.C., Section 3553(a)." *Id.* at 21-22.

As the district court proceeded with its 3553(a) analysis, it found that Defendant committed a serious offense but that a within-Guidelines sentence should "provide adequate deterrence to others from reentering the United States illegally . . . . ." *Id.* at 22. Additionally, the district court found a "striking" need to protect the public because Defendant's PSR revealed "an individual who is a gang member who is consistently engaged in dangerous conduct when coming in contact with law enforcement and security personnel in which, fortunately, thus far nobody has been hurt seriously . . . but it is a very serious situation." *Id.* Accordingly, the district court denied Defendant's request for a downward departure, determining that:

> what the court needs to do in this case is impose a sentence that will deal with the issue of a persistent reentrant who is a danger to those who apprehend him in a situation that is simply a very bad situation waiting for an extremely bad result . . . . Under these circumstances, the appropriate sentence in this case is eight years in prison with a three-year period of supervised release with the requirement that [Defendant] not illegally return to the United States . . . .This is probably the most aggravated reentrant case that I have had, and we have had a lot . . . . And I am staying within the guideline range. I think it could be argued that [the sentence] could be longer, I don't think that's appropriate, I think the guidelines adequately address the problems, but they do point them out dramatically.

*Id.* at 23-24. Finally, the district court gave both parties the opportunity to raise new objections to Defendant's sentence. *Id.* at 28. Neither party objected, *Id.*, and defendant timely appealed. (R. 40, Notice of Appeal.)

On appeal, Defendant contends that his within-Guidelines sentence is procedurally and substantively unreasonable. In particular, Defendant argues that the district court "erred by failing to give proper weight to mitigating circumstances suggesting a lesser penalty in light of the amendments to USSG § 2L2.1 and the 18 U.S.C. § 3553(a) factors. . . ." (Def.'s Br. at 2.)

## II. ANALYSIS

**A. Defendant's Sentence is Procedurally and Substantively Reasonable**

Defendant asserts that his sentence is procedurally and substantively unreasonable because the district court "fail[ed] to give proper weight to mitigating circumstances suggesting a lesser penalty in light of the amendments to USSG 2L1.2 and the 18 U.S.C. § 3553 factors . . . ." (*Id.*) In particular, the Defendant argues that the district court "gave too little weight to [his] cultural assimilation and too much weight to his criminal history." (*Id.* at 13.) We disagree.

### 1. Standard of Review

This Court reviews a district court's sentence for procedural and substantive reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). We begin by "ensur[ing] that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* Then, "[a]ssuming that the district court's sentencing decision is procedurally sound," we consider the substantive reasonableness of the sentence and take the totality of the circumstances into account. *Id.* "When reviewing for substantive reasonableness, if a sentence falls within the Guidelines range, an appellate court may apply a presumption of reasonableness." *United States v. Griffin*, 530 F.3d 433, 439 (6th Cir. 2008) (internal citations omitted). The "defendant bears the burden of rebutting this presumption." *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009).

### 2. The District Court Properly Applied U.S.S.G. § 2L1.2

Application Note 8 to the 2010 amendment to U.S.S.G. Section 2L1.2 (the "Note") explains that a downward departure on the basis of cultural assimilation may be appropriate in limited circumstances. The Note states:

> There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation. Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

*Application Note 8, U.S.S.G. § 2L1.2* (2010). In order to determine whether a departure is appropriate, the district court must weigh the following seven factors:

> (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal history after illegally reentering the United States.

*Id.*

In this case, the district court considered each of the seven factors, *see* R. 41, pp. 11-13, and then determined that "this is not a good case for a departure for cultural assimilation." (*Id.* at 13.) Given Defendant's serious criminal history, coupled with his additional criminal activity after illegally reentering the United States, the district court explained that the Defendant "is a danger to those who apprehend him in a situation that is . . . waiting for an extremely bad result. We haven't had anybody seriously hurt yet. It is, frankly, a matter of luck, it appears, more than anything else." (*Id.* at 23.) Although Defendant offers a lengthy challenge of the district court's analysis with regard to factors (6) and (7), he fails to establish that the district court's conclusion regarding his eligibility for the departure was unreasonable. We consider Defendant's arguments pertaining to factors (6) and (7) in turn.

With regard to factor (6), Defendant argues that the district court erred by overstating the seriousness of his criminal history. Defendant first notes that his three violent felonies occurred in 2002 and 2003, whereas the instant offense did not occur until 2010. Next, Defendant asserts that

he "was essentially arrested for simply walking up to officers investigating a store burglary," and that officers decided to frisk him "merely because the store owner said that he had problems with [him] in the past." (Def.'s Br. at 17-18.) Defendant acknowledges that he resisted arrest and that a toy cap gun was found in his pocket, but he argues that "possession of a cap gun is not dangerous conduct, particularly when one merely walks up to the scene of a dangerous burglary." (*Id.* at 18.) Additionally, Defendant asserts that "there was no indication in the PSR that [he] engaged in dangerous conduct with authorities when he was arrested for each of the three violent crimes for which he was given the 16 level criminal history enhancement. Finally, Defendant argues that the district court wrongfully characterized him "as a gang member who consistently engaged in dangerous conduct when coming into contact with law enforcement or security personnel." *Id.* Toward that end, Defendant contends that while the PSR provided that he "had been" a gang member it did not reveal whether he actively retained his gang member status. *Id.*

All of Defendant's arguments with respect to factor (6) are unavailing. While the district court spent a substantial part of the sentencing hearing discussing his criminal history, its discussion was proportionate to Defendant's significant criminal record. As the district court explained at the outset of its analysis, Defendant's extensive criminal history was a "major problem" for Defendant's downward departure request. (R. 41 at 14.) The district court reasonably considered each aspect of Defendant's criminal history by going through each of Defendant's prior criminal convictions. (*Id.* at 14-20.)

Because Defendant fails to establish that the district court unduly weighed any of Defendant's criminal convictions, his arguments regarding the dates of his violent felonies and the circumstances

surrounding his underlying arrest are irrelevant. Additionally, Defendant is wrong to suggest that the district court mischaracterized the PSR by connecting Defendant's violent conduct with the authorities when he was arrested for violent felonies. Rather, the district court accurately noted that Defendant's numerous other arrests created a "continuous pattern" of resisting arrest and escaping the authorities. (R. 41 at 20.) Finally, Defendant's account of the PSR with regard to his status as a gang member is incomplete. Although the PSR provides that Defendant "reported past affiliation" with a gang "for three to four months when he was 14 years old," the PSR *also* reports that "[a] check of the Memphis Police Department gang track system revealed that the defendant was a known [gang] member." (PSR ¶ 54.) Because Defendant conceded that the PSR's factual determinations were correct, R. 36 at 1, it was not unreasonable for the district court to characterize Defendant as a gang member.

We similarly find Defendant's challenges with regard to factor (7), which asks the district court to consider whether the defendant engaged in criminal activity after illegally reentering the United States, unpersuasive. Defendant admits that he has engaged in criminal activity after reentering the country, but asserts that the district court was wrong to conclude that his deportations "had very little effect in terms of conforming [his] conduct to the laws of the United States." (Def.'s Br. at 20.) Defendant asserts that "[t]his evinces a fundamental misunderstanding of the basis for the decision to allow cultural assimilation departures." (*Id.*) In support of this point, Defendant cites a case from the Eastern District of Wisconsin that distinguished cultural assimilation from "the threat of *future* deportation." (*Id.*) (emphasis added) (quoting *United States v. Martinez-Alvarez*, 256, F. Supp. 2d 917, 919 (E.D. Wis. 2003)).

Not one of Defendant's allegations of error with regard to factor (7) is persuasive. The Defendant concedes he "engaged in criminal activity after illegally reentering the United States." (R. 41 at 12.) While Defendant may not like the district court's conclusion that his criminal activity is important in determining his conformity with the laws of the United States, this conclusion logically follows from the district court's factual finding. Finally, Defendant's reliance on *Martinez-Alvarez* is inapposite because the case concerns *future* deportations whereas the district court's analysis in this case was specific to Defendant's *past* deportations. As such, the case does not even rise to the level of persuasive authority.

In sum, this Court is not persuaded by Defendant's challenge to the district court's application of Section 2L1.2. We find that the district court reasonably determined that Defendant was not deserving of a cultural assimilation departure given his extensive and violent criminal record. Defendant failed to establish—either at sentencing or on appeal—that he satisfied requirement (C) of the Note, which mandates that "a [cultural assimilation] departure is not likely to increase the risk to the public from further crimes of the defendant." *Application Note 8, U.S.S.G. § 2L1.2* (2010). Accordingly, we find that the district court's application of §2L1.2 was reasonable.

### 3. Defendant Failed to Adequately Brief the § 3553(a) Factors

Defendant also baldly asserts that the district court erred in its application of § 3553(a) factors. *See* Def.'s Br. at 12. Because Defendant fails to develop any explicit allegations of infirmity with regard to the district court's application of the § 3553(a) factors, however, this Court is not obligated to address this issue. *See* Fed. R.App. P. 28(a) (requiring an appellate brief contain arguments regarding the issues presented along with supporting reasons and citations); *see also*

*Diallo v. Mukasey*, 268 F. App'x 373, 380 (6th Cir. 2008). Even so, this Court finds that, based on Defendant's discussion of § 2L1.2, Defendant's oblique allegation regarding the § 3553(a) factors are reasonably limited to §§ 3553(a)(1) and (2). *See* 18 U.S.C. § 3553(a)(1) and (2) ("The court, in determining the particular sentence to be imposed, shall consider—(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and] (2) the need for the sentence imposed . . . ."); *see also* Def.'s Br. at 13 ("The district court gave too little weight to Mr. Valles-Renteria's cultural assimilation and too much weight to his criminal history."). As such, we observe that our discussion of the § 2L2.1 factors adequately address the merits of Defendant's undeveloped § 3553(a) claim.

**B. The District Court Adequately Considered Defendant's Arguments**

Defendant also contends that "[i]t was procedurally unreasonable for the court to fail to consider [his] arguments concerning the additional punishment of deportation and the deterrent effect of the harsh illegal reentry sentencing guidelines." Def.'s Br. at 22. We disagree.

*1. Standard of Review and Relevant Law*

As discussed above, a district court's sentencing determinations are generally reviewed for abuse of discretion. *See Gall v. United States*, 552 U.S. 38 (2007). If, however, a defendant fails to object to a procedural error at sentencing despite being given an opportunity to do so, plain error review applies. *See United States v. Rosenbaum*, 585 F.3d 259, 266-67 (6th Cir. 2009) (applying plain error where defendant failed to object to a procedural error at sentencing); *see also United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (same). *See also United States v. Bostic,* 371 F.3d 865 (6th Cir.2004) (providing that plain error review only applies where the parties were given

a given an opportunity to raise objections after the sentence was pronounced but failed to do so).

While Defendant did not object to the district court's sentence despite being given the opportunity

to do so, *see* R. 41 at 28, Defendant did raise his arguments on appeal in a cognizable fashion during

the course of his sentencing hearing.

The Supreme Court has held that a sentence is procedurally reasonable if the district court

"set[s] forth enough to satisfy the appellate court that [it] has considered the parties' arguments and

has a reasoned basis for exercising [its] own decisionmaking authority." *Rita v. United States*, 551

U.S. 338, 356 (2007). "When a district court adequately explains *why* it imposed a particular

sentence, especially one within the advisory Guidelines range, we do not further require that it

exhaustively explain the obverse – *why* an alternative sentence was *not* selected – in every instance."

*United States v. Lafarga*, No. 09-5632, 2010 WL 3521949, at *2 (6th Cir. Sept. 2, 2010) (quoting

*United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006)).

    *2. The District Court Sufficiently Considered Defendant's Arguments*

Defendant argues that the district court failed to consider two mitigating arguments at

sentencing. First, Defendant asserts that the district court "gave no consideration to the impact of

the additional punishment of deportation after sentencing." Def.'s Br. at 23. Second, Defendant

argues that "[t]he district court ignored [his] argument regarding the deterrent impact of the harsh

illegal reentry sentencing guidelines." We disagree.

The district court functionally considered both of Defendant's arguments throughout his

sentencing hearing. *See United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010) ("[O]ur focus

is functional in nature . . . We are to focus less on what the transcript reveals that the court said and

more on what the transcript reveals the court did."). Here, the district court made clear that it understood the seriousness of Defendant's punishment throughout the sentencing hearing. The district court explained that Defendant's reentry was a serious offense and thoroughly analyzed each of the §3553(a) factors underpinning its sentence. *See* R. 41. After completing this analysis, the district court also observed that Defendant's case "is probably the most aggravated reentrant case that I have had, and we have had a lot." *Id.* at 23. In doing so, the district court conveyed its functional understanding of Defendant's position as well as a familiarity with the impact of deportation and the reentry sentencing guidelines. Finally, the district court stayed within the Guidelines range despite noting that the Defendant's conduct presented an "unusual case" where "it could be argued that it [the sentence] could be longer." *Id.* Taken together, the district court's findings indicate that it fully understood Defendant's arguments and then rejected the notion that Defendant deserved a below-Guidelines sentence. We therefore find that Defendant has failed to establish any error.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM.**