**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

JOSE MERCED MARCIAL-SANTIAGO,
            *Defendant-Appellant.*

No. 05-30248

D.C. No.
CR-04-00164-SEH

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

ROBERTO ACOSTA-FRANCO,
            *Defendant-Appellant.*

No. 05-30249

D.C. No.
CR-04-00147-SEH

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

VICTOR MANUEL SANCHEZ-ACOSTA,
            *Defendant-Appellant.*

No. 05-30251

D.C. No.
CR-04-00144-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Submitted March 6, 2006*
Seattle, Washington

―――――――――――――

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)

Filed May 8, 2006

Before: Diarmuid F. O'Scannlain, Barry G. Silverman, and Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

David F. Ness, Federal Defender, District of Montana, Great Falls, Montana, for the defendants-appellants.

George F. Darragh Jr., U.S. Attorney's Office, Great Falls, Montana, for the plaintiff-appellee.

**OPINION**

GOULD, Circuit Judge:

Jose Marcial-Santiago, Roberto Acosta-Franco, and Victor Sanchez-Acosta ("Appellants") appeal the sentences they received upon pleading guilty and being convicted of being illegal aliens found in the United States after deportation in violation of 8 U.S.C. § 1326(a). Appellants were prosecuted and sentenced in the District of Montana, which does not have a fast-track program. They contend that the disparity between their sentences, and the sentences imposed on similarly-situated defendants who are prosecuted in districts with fast-track programs, is unwarranted and renders their sentences "unreasonable" within the meaning of *United States v. Booker*, 543 U.S. 220 (2005). Appellants also contend that this disparity violates their rights to due process and equal

protection. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

# I

On October 13, 2004, Acosta-Franco and Sanchez-Acosta were denied entry into Canada from the Sweetgrass Port of Entry in Montana. U.S. Border Patrol agents arrested the two men on October 15, 2004, after determining that they had prior felony convictions and had previously been deported from the United States. Also in October 2004, the Department of Homeland Security received a report that Marcial-Santiago, a previously removed illegal alien, had returned to the Great Falls, Montana area. Arresting Marcial-Santiago on November 8, 2004, U.S. Border Patrol agents confirmed that he had been deported to Mexico on three prior occasions.

Upon the entry of their guilty pleas, Acosta-Franco, Sanchez-Acosta, and Marcial-Santiago were convicted of illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a). In sentencing memoranda and at their sentencing hearings, Appellants argued that the disparity in sentences created by the unavailability of a fast-track program in the District of Montana is unwarranted, offends Congress's goal of sentencing uniformity, and violates their due process and equal protection rights. The district court rejected these arguments and sentenced each appellant to a term of imprisonment within the applicable Sentencing Guidelines range;[1] Acosta-Franco received a 66-month sentence, Sanchez-Acosta received a 46-month sentence, and Marcial-Santiago received a 50-month sentence. Appellants filed timely appeals, which we consolidated for review.

---

[1]The Presentence Report ("PSR") for Acosta-Franco recommended a Guidelines range of 57 to 71 months. The PSRs for Sanchez-Acosta and for Marcial-Santiago recommended Guidelines ranges of 41 to 51 months.

## II

We review sentences imposed after *Booker* for reasonableness, as is required by *Booker*, even when these sentences are within the Guidelines ranges. *United States v. Plouffe*, 436 F.3d 1062 (9th Cir. 2006), *amended by* ___ F.3d ___, No. 05-30045, 2006 WL 1044228, at *4 (9th Cir. Apr. 21, 2006). In conducting our review, we consider whether the district court accurately calculated the Guidelines range and, if it did, whether the sentence is reasonable in light of the sentencing factors set forth in 18 U.S.C. § 3553(a).[2] *See United States v. Cantrell*, 433 F.3d 1269, 1279-80 (9th Cir. 2006). We review de novo the constitutionality of a federal statute. *See Eunique v. Powell*, 302 F.3d 971, 973 (9th Cir. 2002).

## III

We turn first to Appellants' contention that the disparity between their sentences, and the sentences they would have received if they had been prosecuted and convicted in a district with a fast-track program, is unwarranted.[3] Appellants

---

[2]These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal records and have been found guilty of similar conduct; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

[3]Appellants do not contend that the district court erroneously denied them a downward departure under the Guidelines to avoid the disparity in sentences, and thus that the court did not accurately calculate the applicable Guidelines ranges. We addressed and rejected this argument in *United States v. Banuelos-Rodriguez*, 215 F.3d 969 (9th Cir. 2000) (en banc), a pre-*Booker* decision in which we held that a defendant's prosecution in a district that did not have a fast-track program was not a proper ground on which to base a departure from an applicable Guidelines range. *Id.* at 978. We do not consider anything in *Booker* to alter the rule established by *Banuelos-Rodriguez*.

assert that by refusing to impose sentences consistent with the sentences imposed on defendants in fast-track districts, the district court did not take adequate heed of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This alleged error, Appellants argue, resulted in sentences for Appellants that are greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2)[4] and thus that are unreasonable. *See Booker*, 543 U.S. at 260. We disagree.

**[1]** In the mid-1990s, federal districts along the border between the United States and Mexico — in Texas, New Mexico, Arizona, and California — began to use fast-track programs to address the growing number of immigration and drug offenses. *See United States v. Morales-Chaires*, 430 F.3d 1124, 1127 (10th Cir. 2005); Erin T. Middleton, Note, *Fast-Track to Disparity: How Federal Sentencing Policies Along the Southwest Border are Undermining the Sentencing Guidelines and Violating Equal Protection*, 2004 UTAH L. REV. 827, 830 (2004). In an effort to manage large caseloads and save prosecutorial resources, federal prosecutors in these districts offered shorter sentences to defendants who pleaded guilty at an early stage in the prosecution and agreed to waive appeal and other rights. *See Morales-Chaires*, 430 F.3d at 1127; Middleton, *supra*, at 829-32. Prosecutors effectuated the shorter sentences through charge-bargaining or recommendations for downward departures at sentencing. *See Morales-Chaires*, 430 F.3d at 1127; Middleton, *supra*, at 829-30.

---

[4]Section 3553(a) requires a court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." These purposes include the need for a sentence to reflect the seriousness of the crime and promote respect for the law; to provide punishment for the crime; to afford adequate deterrence; to protect the public from a defendant's future crimes; and to provide a defendant with necessary educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2).

**[2]** In 2003, in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003), Congress explicitly authorized downward departures in fast-track programs. The PROTECT Act directed the U.S. Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." *Id.*, 117 Stat. at 675. The Sentencing Commission then adopted U.S.S.G. § 5K3.1, which provides that "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."

**[3]** In light of Congress's explicit authorization of fast-track programs in the PROTECT Act, we cannot say that the disparity between Appellants' sentences and the sentences imposed on similarly-situated defendants in fast-track districts is "unwarranted" within the meaning of § 3553(a)(6). When Congress passed the PROTECT Act, it did so with knowledge that 18 U.S.C. § 3553(a)(6) was directing sentencing courts to consider the need to avoid unwarranted sentencing disparities. By authorizing fast-track programs without revising the terms of § 3553(a)(6), Congress was necessarily providing that the sentencing disparities that result from these programs are warranted and, as such, do not violate § 3553(a)(6). *See United States v. Martinez-Martinez*, 442 F.3d 539, 542 (7th Cir. 2006) ("Given Congress' explicit recognition that fast-track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early disposition program."); *United States v. Sebastian*, 436 F.3d 913, 916 (8th Cir. 2006) (stating that in passing the PROTECT Act, "Congress and the President . . . concluded that the advantages stemming from fast-track programs outweigh their disadvantages, and that

any disparity that results from fast-track programs is not unwarranted" (internal quotations and citation omitted)). Accordingly, we conclude that the disparity between Appellants' sentences and the sentences imposed on similarly-situated defendants who are prosecuted in fast-track districts is not unwarranted. It is justified by the benefits gained by the government when defendants plead guilty early in criminal proceedings.

[4] Even if this disparity were assumed to be unwarranted, however, that factor alone would not render Appellants' sentences unreasonable; the need to avoid unwarranted sentencing disparities is only one factor a district court is to consider in imposing a sentence. *See* 18 U.S.C. § 3553(a); *Morales-Chaires*, 430 F.3d at 1131. At Appellants' sentencing hearings, the district court noted that the Guidelines ranges were advisory, considered and rejected Appellants' arguments regarding the disparity between sentences imposed in the District of Montana and in fast-track districts, and weighed the other § 3553(a) factors. After completing this review, the court imposed sentences that are within the Guidelines ranges. The district court gave thoughtful attention to factors recognized in § 3553(a) and exercised sound discretion to ensure that the punishment fit the crime and the circumstances of the appellants. We conclude that the sentences Appellants received are reasonable, and we will not here disturb the discretion of the sentencing court. *See Plouffe*, 2006 WL 1044228, at *5.

## IV

[5] We turn next to Appellants' assertion that the PROTECT Act's provision authorizing fast-track programs violates their due process and equal protection rights because similarly situated individuals in districts with fast-track programs could receive lower sentences. The fast-track provision of the PROTECT Act applies only to convicted felons, and so we consider whether the provision is rationally related to a

legitimate government interest. *See Chapman v. United States*, 500 U.S. 453, 464-65 (1991); *United States v. Carson*, 988 F.2d 80, 82 (9th Cir. 1993) (per curiam). Because the government has a legitimate interest in conserving prosecutorial and judicial resources in districts with large numbers of immigration cases, and fast-track programs are rationally related to that interest, we conclude that the PROTECT Act's authorization of these programs, and their implementation in some but not all districts, does not violate Appellants' equal protection and due process rights.[5] *See United States v. Melendez-Torres*, 420 F.3d 45, 53 (1st Cir. 2005).

**AFFIRMED**.

---

[5]In challenges to sentencing regimes, "an argument based on equal protection essentially duplicates an argument based on due process." *Chapman*, 500 U.S. at 465; *see also Carson*, 988 F.3d at 82.