**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellant,*

v.

JUAN GONZALEZ-ZOTELO,
       *Defendant-Appellee.*

No. 08-50010

D.C. No.
CR-07-01812-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
December 12, 2008—Pasadena, California

Filed January 8, 2009

Before: Barry G. Silverman and Carlos T. Bea,
Circuit Judges, and Suzanne B. Conlon,* District Judge.

Opinion by Judge Silverman

*The Honorable Suzanne B. Conlon, United States District Court for
the Northern District of Illinois, sitting by designation.

149

**COUNSEL**

David P. Curnow, United States Attorney's Office for the Southern District of California, San Diego, California, for the plaintiffs-appellants.

Steven Francis Hubachek, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellee.

**OPINION**

SILVERMAN, Circuit Judge:

The government appeals the 30-month sentence the district court imposed on Juan Gonzalez-Zotelo after his conviction for being a deported alien found in the United States in violation of 8 U.S.C. § 1326. The U.S. Attorney's Office did not offer Gonzalez-Zotelo a fast-track plea bargain because of his prior conviction for lewd and lascivious acts with a child. The district court nonetheless gave Gonzalez-Zotelo the same sentence given earlier that day to a fast-track defendant with armed robbery priors, to promote "consistency." Because the district court erred when it imposed a lower sentence on Gonzalez-Zotelo based solely on what it misperceived to be unwarranted sentencing disparity, we vacate the sentence and remand for re-sentencing. Under our cases, the disparity in question is indeed warranted, because it is justified by Congress's approval of fast-track plea bargaining programs. This

conclusion is not undermined by *Kimbrough v. United States*, which allows judges to disagree with Guidelines sentencing policy, not with congressional sentencing policy.

## I.   Background

On July 10, 2007, Gonzalez-Zotelo was charged with violating 8 U.S.C. § 1326, being found in the United States after deportation. The government refused to offer Gonzalez-Zotelo a fast-track charge bargain because he had a prior California felony conviction for lewd or lascivious acts with a child under the age of 14. Gonzalez-Zotelo waived a jury trial and was convicted after a bench trial. Prior to sentencing, the government filed a sentencing summary chart. Gonzalez-Zotelo filed a sentencing memorandum arguing that he was eligible for departures from the Guidelines due to acceptance of responsibility, over-representation of criminal history, and his offer to waive appeal.

Gonzalez-Zotelo's criminal history score (Category IV) and adjusted offense level (22) resulted in an advisory Guidelines range of 63 to 78 months imprisonment. At the sentencing hearing, the district judge first agreed that Gonzalez-Zotelo's criminal history category over-represented his criminal history and departed downwards to Category III. The district court calculated the new advisory Guidelines range at 51 to 63 months' imprisonment.

The district court then sentenced Gonzalez-Zotelo to 30 months imprisonment. The judge's rationale for imposing the below-Guidelines sentence was a lack of "consistency" between Gonzalez-Zotelo's Guidelines range and the range of a defendant — previously convicted of two armed robberies — that he had sentenced earlier that day and who had pleaded guilty pursuant to a fast-track plea bargain. That defendant had been offered a plea to a less serious felony and to a misdemeanor and was sentenced to 30 months. The district judge stated:

> And would I give 57 months in both cases? Sure I would. I didn't accept the plea agreement in the other case, but I was bound to impose 30 months.

> Having done that in this case, now I send this guy back to the tank and what do I give him, 57 months, and he is sitting next to the guy with the two armed robberies and they start comparing notes. Doesn't seem fair to me.

> . . .

> I am also, as I have said, aware and mindful of the fact that similarly situated individuals on this very day in this very court got a way better deal than what's being advocated for this guy. And I just don't see enough difference between these two cases.

Although the government objected on the basis that Gonzalez-Zotelo's conviction for lewd or lascivious conduct was "serious," it did not suggest that the district court could not properly take fast-track disparities into account.

## II.  Discussion

The government argues that it was unreasonable for the district court to base its sentencing decision solely on disparities between a defendant who did not receive a fast-track plea offer and a defendant who did. Gonzalez-Zotelo contends that the district court did not err because, after the Supreme Court's decision in *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007), district judges are permitted to impose sentences reflecting their policy disagreements with the Guidelines. We review the government's appeal for plain error because it failed to "provide[ ] the district court with an opportunity to address the error in the first instance" by objecting on this ground. *See United States v. Grissom*, 525 F.3d 691, 694 (9th Cir. 2008) (internal quotations omitted).

Under this standard, the government must demonstrate that: (1) there was error; (2) the error was plain; and (3) the error affected substantial rights. *United States v. Perez*, 116 F.3d 840, 846 (9th Cir. 1997). We exercise our discretion to correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*.

**[1]** The fast-track program allows federal prosecutors to offer shorter sentences to defendants who plead guilty at an early stage in the prosecution and agree to waive appeal and other rights. *United States v. Marcial-Santiago*, 447 F.3d 715, 718 (9th Cir. 2006). In 2003, Congress explicitly authorized downward sentencing departures for fast-track programs in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 401(m), 117 Stat. 650 (2003). The PROTECT Act directed the Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." *Id*.

**[2]** In *Marcial-Santiago*, we held that sentencing disparities between defendants prosecuted in districts that offer fast-track programs and defendants prosecuted in non-fast-track districts are not "unwarranted." 447 F.3d at 719. The differences between these defendants' sentences are "justified by the benefits gained by the government when defendants plead guilty early in criminal proceedings." *Id*. Under this logic, a district court may not take fast-track disparities into account in sentencing under 18 U.S.C. § 3553(a)(6) because § 3553(a)(6) directs the district judge to consider only "unwarranted" sentencing disparities. *See United States v. Gomez-Herrera*, 523 F.3d 554, 563 n.4 (5th Cir. 2008); *United States v. Arevalo-Juarez*, 464 F.3d 1246, 1251 (11th Cir. 2006); *United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006); *see also United States v. Perez-Pena*, 453 F.3d 236, 244 (4th Cir.

2006) ("If defendants in fast-track districts expected to receive similar sentences regardless of whether they participated in a program, defendants would have little incentive to participate."). *Marcial-Santiago*'s justification of disparities based on the benefits gained by the government applies equally to disparities between defendants within the same district. *See United States v. Vasquez-Landaver*, 527 F.3d 798, 804-05 (9th Cir. 2008) (citing *Marcial-Santiago* in holding that a district court's refusal to give a lower sentence based on intra-district disparities was not an abuse of discretion). Thus, unless *Kimbrough* has overruled *Marcial-Santiago*, the district court's consideration of "warranted" sentencing disparities would be error here.

**[3]** In *Kimbrough*, the Supreme Court held that a district judge "may determine . . . that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing," and that, "[i]n making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." 128 S. Ct. at 564. *Kimbrough* held that the 100-to-1 Guidelines ratio for crack offenses compared to powder cocaine offenses "lack[ed] grounding in the text" of the relevant statute. *Id.* at 571. Noting that the crack/powder cocaine guidelines did not exemplify the Sentencing Commission's exercise of its "characteristic institutional role" because they were not based on "empirical data and national experience," the Court upheld the district court's departure from the Guidelines based on the crack/powder disparity. *Id.* at 575-76.

**[4]** We must determine whether we are still bound to follow the reasoning of *Marcial-Santiago* in light of *Kimbrough*. "A three-judge panel must follow a prior circuit decision unless a subsequent decision by a relevant court of last resort either effectively overrules the decision in a case 'closely on point' or undercuts the reasoning underlying the circuit precedent rendering the cases 'clearly irreconcilable.' " *Hulteen v. AT&T Corp.*, 498 F.3d 1001, 1009 (9th Cir. 2008), *cert.*

*granted*, 128 S. Ct. 2957 (2008) (No. 07-543). The Fifth and Eleventh Circuits have concluded that *Kimbrough* did not impact case law preventing district courts from considering fast-track disparities. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1239 (11th Cir. 2008); *Gomez-Herrera*, 523 F.3d 554, 563 (5th Cir. 2008). Both courts held that "*Kimbrough* addressed only a district court's discretion to vary from the Guidelines based on a disagreement with *Guideline*, not [c]ongressional, policy." *Id.*; *Vega-Castillo*, 540 F.3d at 1239. In contrast, a First Circuit panel, noting that it was permitted to overrule its circuit precedent "in 'those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind," held that *Kimbrough*'s "more holistic" approach "militate[d] in favor" of permitting district courts to consider fast-track disparities. *United States v. Rodriguez*, 527 F.3d 221, 225, 227 (1st Cir. 2008).

**[5]** We now join the Fifth and Eleventh Circuits in holding that *Kimbrough* did not undercut our precedent holding that fast-track disparities are not "unwarranted" so as to permit their consideration under § 3553(a)(6). *Kimbrough* did not "effectively overrule[ ]" or "undercut[ ] the reasoning" of *Marcial-Santiago* so that the two cases are "clearly irreconcilable." Although *Kimbrough* permits district courts to "vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines," *Kimbrough*, 128 S. Ct. at 570, it does not address a district court's ability to vary from the Guidelines based on disagreement with congressional policy, the situation we confront here. *See Vega-Castillo*, 540 F.3d at 1239; *Gomez-Herrera*, 523 F.3d at 563.

**[6]** Congress authorized downward departures for fast-track programs in the PROTECT Act. "By authorizing fast-track programs without revising the terms of § 3553(a)(6), Congress was necessarily providing that the sentencing disparities

that result from these programs are warranted and, as such, do not violate § 3553(a)(6)." *Marcial-Santiago*, 447 F.3d at 718. The district court, like this panel, was bound to follow the reasoning of *Marcial-Santiago* unless it had been "effectively overrule[d]" or was "clearly irreconcilable" with a case from the relevant court of last resort. *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003). The district court's failure to do so here was therefore error even after *Kimbrough* because the judge's downward departure reflected not a disagreement with the Guidelines, but with congressional policy authorizing downward departures for fast-track defendants. While *Kimbrough* permits a district court to consider its policy disagreements with the Guidelines, it does not authorize a district judge to take into account his disagreements with congressional policy.

**[7]** The district court's error here was plain. An error is "plain" when it is "clear" or "obvious" under the law. *Perez*, 116 F.3d at 846. Under *Marcial-Santiago*, the district court should not have considered fast-track disparities to be "unwarranted" so as to permit a departure under § 3553(a)(6). 447 F.3d at 718. Since *Marcial-Santiago* was controlling both before and after *Kimbrough*, the district court's error in failing to follow binding precedent is clear.

**[8]** To prevail on plain error review, the government must also show that the district court's error affected its substantial rights. *Perez*, 116 F.3d at 846. The government's substantial rights may be affected when a defendant receives an inappropriate sentence. *See United States v. Willingham*, 497 F.3d 541, 545 (5th Cir. 2007); *United States v. Barnett*, 410 F.3d 1048, 1050-51 (8th Cir. 2005); *United States v. Dickerson*, 381 F.3d 251, 257 (3d Cir. 2004) (collecting cases); *United States v. Clark*, 274 F.3d 1325, 1329 (11th Cir. 2001); *United States v. Perkins*, 108 F.3d 512, 517 (4th Cir. 1997); *United States v. Barajas-Nunez*, 91 F.3d 826, 833 (6th Cir. 1996). To meet the substantial rights test, the government must show a reasonable probability that Gonzalez-Zotelo would have

received a different sentence but for the district court's error. *See United States v. Dallman*, 533 F.3d 755, 762 (9th Cir. 2008); *Willingham*, 497 F.3d at 545. Here, the government meets the "substantial rights" test. The district judge stated that he would have given a 57-month sentence to Gonzalez-Zotelo and the defendant he sentenced earlier that day if permitted. The judge went on to give Gonzalez-Zotelo a 30-month sentence based solely on a perceived disparity with the fast-track defendant. Thus, the government has shown a reasonable probability that Gonzalez-Zotelo would have received a different sentence but for the error.

**[9]** We exercise our discretionary power to correct the plain error because the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Perez*, 116 F.3d at 846. Because there is a reasonable probability that the district judge would have given a different sentence but for the error, "everyone will be left to wonder about whether the sentencing court might have acted differently" unless this case is remanded for resentencing. *United States v. Ameline*, 409 F.3d 1073, 1080-81 (9th Cir. 2005). Such a situation would undermine the fairness and integrity of judicial proceedings. *Id*. Accordingly, we vacate the sentence and remand for resentencing.

We note that even if *Marcial-Santiago* were no longer controlling, the district court's failure to impose an individualized sentence in this case would require remand. A district judge is required to make an "individualized determination" of a sentence based on the facts. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Although the judge is not required to "tick off each of the § 3553(a) factors to show that it has considered them," *id*. at 992, he is required to provide "defendant-specific reasons for imposing a certain sentence" in order to comply with § 3553. *United States v. Delgado*, 357 F.3d 1061, 1071 (9th Cir. 2004). The sentencing transcript here shows that the district judge would have been comfortable imposing a 57-month sentence but for the happenstance

of the sentence he gave to a different defendant that morning. A sentence that is calculated solely on that basis does not comply with *Carty*. The judge failed to make an individualized determination of Gonzalez-Zotelo's sentence based on facts specific to him. Thus, we vacate the sentence and remand also to permit an individualized determination of Gonzalez-Zotelo's sentence based on the facts of his case.

## III.   Conclusion

For the reasons stated, the defendant's sentence is VACATED and the matter is REMANDED for resentencing in accordance with this opinion.