**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-1878 |
| Plaintiff - Appellant, | D.C. No. 2:21-cr-00190-ART-EJY-1 |
| v. | |
| PAUL ENGSTROM, | OPINION |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Argued and Submitted September 17, 2025
San Francisco, California

Filed February 5, 2026

Before: David F. Hamilton, Ryan D. Nelson, and Patrick J. Bumatay, Circuit Judges.[*]

Opinion by Judge R. Nelson

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the Court of Appeals, 7th Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the district court's decision that Paul Engstrom was eligible for safety valve relief under 18 U.S.C. § 3553(f), vacated the sentence imposed below the statutory minimum, and remanded for resentencing in a case in which Engstrom pleaded guilty to drug-related crimes.

The district court imposed the below-minimum sentence after holding a resentencing hearing under Fed. R. Crim. P. 35. Rejecting Engstrom's argument that this court could not review the district court's decision to hold the Rule 35 resentencing hearing, the panel reviewed that decision for plain error, and held that because the district court identified a clear error of a "technical" kind in the original sentencing hearing, the district court's choice to conduct the Rule 35 hearing was not plain error.

The panel held that Engstrom is not eligible for safety valve relief for two reasons.

First, Engstrom failed to provide a complete debrief to the government before sentencing, as required by 18 U.S.C. § 3553(f)(5). The panel rejected the district court's approach which proceeded as if virtually any truthful statement given upon arrest, a truthful guilty plea allocution, or additional statements may be enough. Engstrom did not provide a complete disclosure. The district court never asked him whether he had given all the information about

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the crime to the government, nor did the record support the existence of such disclosure. Engstrom never claimed that such disclosure occurred. Given these circumstances, Engstrom could not qualify for safety valve relief.

Second, *Pulsifer v. United States*, 601 U.S. 124 (2024), forecloses safety valve relief. In *Pulsifer*, which was issued during this appeal, the Supreme Court adopted a disjunctive reading of 18 U.S.C. § 3553(f)(1), holding that if a defendant has even one of the three listed offenses, then that defendant becomes ineligible for safety valve relief. Because Engstrom had a prior 3-point offense for conspiracy to distribute a controlled substance, Engstrom is categorically ineligible. The panel rejected Engstrom's arguments (1) that it violates his due process right to fair notice to apply *Pulsifer* on direct appeal akin to an impermissible ex post facto law; and (2) that even if *Pulsifer* applies on direct appeal, the government cannot satisfy the third and fourth prongs of plain error review.

## COUNSEL

Mina Chang (argued), Peter H. Walkingshaw, and Daniel D. Hollingsworth, Assistant United States Attorneys; Adam M. Flake, Appellate Chief; Sigal Chattah and Jason M. Frierson, United States Attorneys; Office of the United States Attorney, United States Department of Justice, Las Vegas, Nevada; for Plaintiff-Appellant.

Houston Goddard (argued), Goddard Pope PLLC, Nashville, Tennessee; Kristi A. Hughes, Law Office of Kristi A. Hughes, Cardiff, California; for Defendant-Appellee.

## OPINION

R. NELSON, Circuit Judge:

The government appeals the district court's order sentencing Paul Engstrom to 46 months' imprisonment for drug-related crimes. The district court sentenced him below the statutory minimum, granting him safety valve relief under 18 U.S.C. § 3553(f). But Engstrom was ineligible for safety valve relief since he failed to provide a complete debrief to the government before sentencing. He is also ineligible under *Pulsifer v. United States*, 601 U.S. 124 (2024), which applies to cases pending on direct appeal. We therefore reverse and remand to the district court for resentencing.

I

Paul Engstrom pleaded guilty to two criminal counts—Conspiracy to Distribute a Controlled Substance and Money Laundering Conspiracy. Under the plea agreement, Engstrom specified that he and his coconspirators agreed to distribute 500 grams or more of cocaine, triggering a five-year mandatory-minimum sentence under 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(B)(ii). Engstrom agreed that he did not qualify for safety valve relief under 18 U.S.C. § 3553(f) and would not request such relief to avoid the mandatory minimum.

In 2024, the district court held a sentencing hearing. It calculated that under the sentencing guidelines, Engstrom fell within Criminal History Category III and that his total offense level was 33. The parties had agreed to recommend a combined six-level downward variance, which brought

Engstrom's offense level to 27, with a recommended sentence range of 87 to 108 months.

The government recommended that the district court apply the requested variance and sentence Engstrom at the bottom of that reduced range. Engstrom urged the court to sentence him to the mandatory minimum of 60 months. The district court then asked Engstrom's probation officer why Engstrom was not eligible for safety valve relief. The officer explained that Engstrom could not receive safety valve relief as he had not met the statutory requirement under § 3553(f)(5) for debriefing the government.

The district court imposed a sentence of 70 months of detention, granting Engstrom a variance beyond the government's recommendation. The court granted this lower sentence considering the difficult pre-trial detention Engstrom faced during the COVID-19 pandemic and mitigating evidence. The district court explained that it had given two coconspirators a two-level downward variance. In so doing, the district court attempted to give those defendants relief akin to the safety valve despite their being ineligible for such relief. The district court justified Engstrom's additional downward variance by sentencing him similarly to his coconspirators, stating that it intended to give him the benefit of the safety valve.

Soon after, the district court scheduled a hearing under Federal Rule of Criminal Procedure 35, which provides that a district court may, "[w]ithin 14 days after sentencing . . . correct a sentence that resulted from arithmetical, technical, or other clear error." At the Rule 35 resentencing hearing, the district court explained that in the original hearing, it deducted two points under the § 3553(a) factors to give Engstrom the benefit of the safety valve; but the district court

gave Engstrom a sentence above the mandatory minimum along with a supervised release term set at the mandatory minimum.

The district court once again asked the probation officer why Engstrom was not eligible for safety valve relief. The probation officer again explained that Engstrom had not met the statutory debrief requirement and had stipulated in his plea agreement that he was ineligible. The district court asked Engstrom whether he had met with the government. Engstrom responded that he had not; he understood the plea agreement to mean he was not to seek safety valve relief.

The district court asked the government what was required to satisfy the statutory debrief requirement. The government responded that a defendant typically meets a prosecutor and shares information about the case.

The district court explained that while the plea agreement bound Engstrom and the government, the court was not so bound; it needed to make an independent assessment whether Engstrom was safety valve eligible. In the district court's view, the statute "does not specify a form, place, or manner of disclosure," so a statement upon arrest or allocution could be enough if the defendant provided "truthful and complete information in good faith." The district court concluded that Engstrom was eligible for the safety valve since he truthfully "said the most in open court" about the conspiracy among his codefendants. The government objected to the safety valve relief.

The district court revisited "the other aspects" of Engstrom's sentence (by considering the § 3553 factors afresh) and recalculated it under § 3553(a). Engstrom's recalculated offense level was 25. The government requested a sentence of 70 months' imprisonment, the low

end of the sentencing guideline range. The district court imposed a 46-month sentence, followed by two years of supervised release to run on concurrent counts. The district court noted that this sentence was a variance below the mandatory minimum as permitted by the applicable safety valve provision.

The government moved for reconsideration, arguing that the district court had erred in applying the safety valve because Engstrom had not met the debrief requirement. While that motion was pending, the permissible time to correct the resentencing error lapsed. *See* FED. R. CRIM. P. 35. The Supreme Court also decided *Pulsifer v. United States*, which held that to be eligible for safety valve relief under § 3553(f)(1), a defendant must satisfy all three statutory criminal history requirements. 601 U.S. 124, 153 (2024). In other words, a defendant could not have more than four criminal history points, or a prior three-point offense, or a prior two-point violent offense. *Id.* This decision abrogated our decision in *United States v. Lopez*, which held that a defendant was eligible for safety valve relief unless all three of the criminal history requirements applied to that defendant, rather than just one. 998 F.3d 431, 444 (9th Cir. 2021); *see also United States v. Lopez*, 58 F.4th 1108 (9th Cir. 2023) (R. Nelson, J., statement regarding denial of rehearing en banc). The government also argued that under *Pulsifer*, Engstrom's prior undisputed three-point conviction for conspiracy to distribute controlled substances in 2017 disqualified him for safety valve relief. The government appealed.

## II

The district court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 18 U.S.C.

§ 3742 and 28 U.S.C. § 1291. Engstrom's motion for judicial notice (Dkt. No. 64) stating that he was housed at a residential reentry center with a release date of December 20, 2025, is granted. Engstrom's release from incarceration does not moot this case for two reasons. First, Engstrom remains on supervised release, meaning a live case or controversy continues despite any release. *United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir. 2001). Second, our decision to vacate and remand could (and here will) result in Engstrom being resentenced and sent back to prison, ensuring a live case or controversy. *See Eagles v. United States ex rel. Samuels*, 329 U.S. 304, 307–08 (1946); *see Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986); *United States v. Lira–Barraza*, 941 F.2d 745, 746 n.1 (9th Cir. 1991) (en banc).

The parties dispute whether we can review the district court's order holding a Rule 35 resentencing hearing. The government argues that it only forfeited its argument by not objecting. Thus, it asserts we should review for plain error. *United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010). But Engstrom argues that the government waived this challenge by not objecting, thus precluding our review.

No waiver occurred. "[F]orfeiture is the failure to make a timely assertion of a right, whereas waiver is the intentional relinquishment or abandonment of a known right." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (cleaned up). "Forfeited rights are reviewable for plain error, while waived rights are not." *Id.* If a party "invite[s] the error, and relinquishe[s] a known right, then the error is waived and therefore unreviewable." *Id.*

The government did not object to the district court's Rule 35 hearing. But failing to object to a district court's sentencing decision—or even affirmatively endorsing it—is not waiver. *United States v. Depue*, 912 F.3d 1227, 1233 (9th Cir. 2019). Waiver occurs only if "there [is] evidence indicating the [parties] knew of their rights and chose to relinquish them anyway." *Id.*; *see also Perez*, 116 F.3d at 845 (collecting cases showing knowing relinquishment of right).

The district court called the Rule 35 hearing to correct "a possible clear error" in its sentencing. The district court did not permit the government a reasonable chance to object to the Rule 35 hearing and just asked the government whether Engstrom was safety valve eligible.

Engstrom characterizes these events as the government tactically choosing not to object to the Rule 35 hearing. But nothing suggests that the government knowingly chose not to object. *See Depue*, 912 F.3d at 1233. Rather, the district court quickly turned to the safety valve issue without discussing the appropriateness of resentencing. While the government ideally should have interrupted to object, forfeiture rather than waiver occurred, and plain error review applies. *See United States v. Grant*, 727 F.3d 928, 933 (9th Cir. 2013); *Perez*, 116 F.3d at 845.

We review the district court's statutory interpretation of the safety valve provision de novo and its factual determination that the defendant is eligible for relief for clear error. *United States v. Mejia-Pimental*, 477 F.3d 1100, 1103 (9th Cir. 2007). This standard of review applies both to the statutory debrief requirement issue and the *Pulsifer* issue.

### III

The district court's choice to hold a Rule 35 resentencing hearing is not plain error. Plain error requires: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [appellant's] substantial rights, which in the ordinary case means it affected the outcome of the district-court proceedings; and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Walter-Eze*, 869 F.3d 891, 911 (9th Cir. 2017) (cleaned up).

The government's argument falls at the threshold prong. A district court "may not modify a term of imprisonment once it has been imposed" except in several enumerated circumstances. 18 U.S.C. § 3582(c). Among them, a district court "may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *Id.* § 3582(c)(1)(B). Rule 35 states that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." FED. R. CRIM. P. 35(a).

The district court did not err when it concluded that it needed to resentence Engstrom. Under the safety valve provision, "a court is to sentence a defendant without regard to any statutory minimum if it finds that" the five statutory criteria in § 3553(f) are met. *Pulsifer*, 601 U.S. at 128 (cleaned up). The district court has an independent duty to determine whether the safety valve applies and, if so, it then sentences the defendant without regard to the statutory minimum for a particular offense. *Id.*

When the district court originally sentenced Engstrom, it stated that two of his codefendants fully benefited from the

safety valve, and the court wanted to "give that benefit to [Engstrom] as well." The district court then applied a downward variance on the calculated guidelines range to sentence Engstrom to 70 months of imprisonment rather than 87 (the low end of the guidelines range). A sentence of 70 months, however, exceeded the applicable mandatory minimum of 60 months. *See* 21 U.S.C. § 841(b)(1)(B).

The district court's actions were clear error of a "technical" kind under Rule 35(a). *See Technical,* Oxford English Dictionary (online ed. 2009) (sense 2.d) (involving "strict legal interpretation"); *United States v. M. M.*, 23 F.4th 216, 221 (3d Cir. 2021) ("arithmetical and technical errors" are "easily identifiable and readily ascertained from the sentencing proceeding and judgment," akin to misapplying "mandatory" sentencing conditions). The district court thought that it erred by considering the mandatory minimum once it made clear that it was giving Engstrom the benefit of the safety valve. *See United States v. Mejia-Pimental*, 477 F.3d 1100, 1109 (9th Cir. 2007).

In such a situation, a district court has the latitude to conduct a Rule 35 rehearing to correct the technical error. If the district court wanted to "give [the benefit of the safety valve] to Engstrom," then it needed to sentence him without regard to the mandatory minimum. Whether the district court was correct that Engstrom should have received the benefit of the safety valve (it was not), it had the latitude under Rule 35 to correct its perceived technical error of considering a mandatory minimum sentence for a defendant it thought should benefit from safety valve relief. Since the district court identified a clear error in the original sentencing hearing, conducting a Rule 35 rehearing was not error. The government's argument thus fails on the first step of plain error review. *See Walter-Eze,* 869 F.3d at 911

(reversal for plain error is appropriate where "(1) there is an error").

## IV

Engstrom is not eligible for safety valve relief for two reasons. First, Engstrom did not satisfy the statutory debrief requirement in § 3553(f)(5). Second, *Pulsifer* also precludes Engstrom from safety valve relief.

### A

#### 1

The district court failed to abide by the three "basic rules of statutory interpretation": "(1) Read the statute; (2) read the statute; (3) read the statute!" JUSTICE AMY CONEY BARRETT, LISTENING TO THE LAW: REFLECTIONS ON THE COURT AND CONSTITUTION 212 (2025) (quoting HENRY J. FRIENDLY, *Mr. Justice Frankfurter and the Reading of Statutes*, in BENCHMARKS 196, 202 (1967)). Under the statute, a defendant is eligible for safety valve relief only if "not later than the time of the sentencing hearing, the defendant has truthfully provided to the government *all* information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." § 3553(f)(5) (emphasis added). But "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." *Id.*

To satisfy the debrief requirement, Engstrom therefore should have provided "*all* the information available to him, regardless of whether it was useful or already known to the government." *United States v. Real-Hernandez*, 90 F.3d 356,

361 (9th Cir. 1996). A defendant seeking safety valve relief need not provide such information to every prosecutor who interacted with him. Providing such information to any prosecutor attributes the information to the government. *Id.* But the debrief requirement mandates that a defendant affirmatively discloses everything he knows about the relevant crimes to a prosecutor or law enforcement officer "not later than the time of the sentencing hearing." *Id.*; § 3553(f)(5).

And this must be a complete, rather than a partial, debrief. The district court concluded that, under *United States v. Schreiber*, 191 F.3d 103 (2d Cir. 1999), disclosure directed towards the court or partial disclosure of relevant information to the government suffices. In *Schreiber*, the Second Circuit held that the "safety valve statute does not specify the form, place, or manner of disclosure[,]" and that a "defendant may comply with the safety valve without ever submitting to a debriefing." *Id.* at 108. According to the district court, *Mejia-Pimental*, 477 F.3d 1100, adopted this principle. There, we held that "as long as a defendant's ultimate proffer is truthful and complete, he has satisfied the fifth safety valve criterion, regardless of timing or motivations." *Id.* at 1106.

The district court extended *Mejia-Pimental*, which requires a complete proffer, too far. There, Mejia-Pimental had three sentencing hearings due to intervening factors in the lead case. *Id.* at 1102. On his third sentencing hearing, he contacted the government to provide a safety valve proffer. *Id.* at 1103. The government refused, and instead Mejia-Pimental wrote and mailed the government a comprehensive letter detailing all his involvement, and his knowledge of others in the charged offense. *Id.* We held that this satisfied § 3553(f)(5) as the defendant "fully disclos[ed]

his knowledge of the charged offense conduct." *Id.* at 1106. Critical to this analysis, however, was that Mejia-Pimental affirmatively reached out to prosecutors by letter to provide this information, and the information was neither "false [nor] incomplete." *Id.* at 1103. Accordingly, *Mejia-Pimental* shows only that a defendant can affirmatively meet the requirement—at least when the government refuses a meeting—without a formal debrief.

But the statute still requires a defendant to affirmatively provide "*all* information and evidence the defendant has concerning the offense" to the government not later than the time of the sentencing hearing. § 3553(f)(5) (emphasis added). The district court read this requirement out of the statute, characterizing it as "no requirement at all," proceeding as if virtually any truthful statement "given upon arrest," a truthful "guilty plea allocution," or "[a]dditional statements" may be enough.

We reject this approach. The statute requires that, "not later than the time of the sentencing hearing, the defendant has [to] truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses." § 3553(f)(5). And a district court must meaningfully check that a defendant "provides truthful, complete information before sentencing" to the government when determining safety valve eligibility. *Mejia-Pimental*, 477 F.3d at 1105. The statutory disclosure required is a "tell all you can tell requirement." *United States v. Shrestha*, 86 F.3d 935, 939 (9th Cir. 1996) (cleaned up). At minimum, "this information includes details concerning other parties to the crime, such as the source who provided defendant with the drugs and other persons in the chain of distribution, if known." *Id.* If "the defendant does not possess such information," he must still "communicate that fact to the

government in order to qualify for the reduction." *Id.* (cleaned up).

## 2

Engstrom thus did not meet the safety valve requirement. He did not provide a complete disclosure. The district court never asked him whether he had given all the information about the crime to the government, nor did the record support the existence of such disclosure. Engstrom never claimed that such disclosure occurred. Given these circumstances, Engstrom could not qualify for safety valve relief.

## B

Engstrom cannot benefit from the safety valve for an additional reason. The Supreme Court's decision in *Pulsifer v. United States*, 601 U.S. 124 (2024), forecloses such relief.

## 1

The Supreme Court decided *Pulsifer* in March 2024, shortly after Engstrom's resentencing hearing, to resolve a long-standing circuit split interpreting § 3553(f)(1). Under this provision, a defendant can only be eligible for safety valve relief if

(1) the defendant does not have—

(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B) a prior 3-point offense, as determined under the sentencing guidelines; *and*

    (C) a prior 2-point violent offense, as determined under the sentencing guidelines.

§ 3553(f)(1) (emphasis added).

*Pulsifer* addressed whether courts should read the word "and" in this provision conjunctively or disjunctively. 601 U.S. at 127. If read conjunctively, a defendant would be safety valve ineligible only if he had all three listed types of offenses in §§ 3553(f)(1)(A), (B), and (C). If read disjunctively, a defendant would be safety valve ineligible if he had any one of the three listed types of offenses.

In *Pulsifer*, the Supreme Court adopted the disjunctive view, holding that if a defendant has even one of the three offenses listed in § 3553(f)(1) then that defendant becomes ineligible for safety valve relief. 601 U.S. at 153. *Pulsifer* abrogated the Ninth Circuit's prior decision in *Lopez*, 998 F.3d 431, in which we had adopted the conjunctive reading. *See United States v. Hernandez*, 105 F.4th 1234, 1237 n.1 (9th Cir. 2024); *Salas v. United States*, 116 F.4th 830, 843 (9th Cir. 2024) (both stating that *Pulsifer* abrogated *Lopez*).

While § 3553(f)(1) did not disqualify Engstrom from safety valve relief under *Lopez*, it does under *Pulsifer*. Engstrom had a prior 3-point offense for conspiracy to distribute a controlled substance (but neither of the other two disqualifying offenses). Therefore, under *Pulsifer*, Engstrom is categorically ineligible for safety valve relief.

The district court rendered its sentence before the Supreme Court issued *Pulsifer*. But ordinarily "an error is plain if it is contrary to the law *at the time of appeal*." *United States v. Macias*, 789 F.3d 1011, 1019 n.4 (9th Cir. 2015) (emphasis added); *see Henderson v. United States*, 568 U.S.

266, 269 (2013) ("as long as the error was plain as of that later time—the time of appellate review—the error is 'plain' within the meaning of the Rule"). Because *Pulsifer* was issued during this appeal, it applies and means that the district court's conclusion that Engstrom qualified for safety valve relief is plain error.

### 2

Engstrom argues that *Pulsifer* should not apply. First, he contends that it violates his due process right to fair notice to apply *Pulsifer* on direct appeal akin to an impermissible ex post facto law. Second, he argues that even if *Pulsifer* applies on direct appeal, the district court did not plainly err since the government cannot satisfy the third and fourth prongs. Both arguments fail.

### a

The due process right to fair notice, while housed within the Due Process Clause, bears close relation to the Constitution's prohibition on ex post facto laws. The Constitution states that "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3; *see also* U.S. Const. art. I, § 10, cl. 1. "As the text of the Clause makes clear, it is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of the government." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (cleaned up; applying parallel limit on state ex post facto laws). Even so, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.* Unpacking the historical origins of this principle illustrates why Engstrom's argument proves unavailing. The due process right to fair notice evolved from the constitution's more general prohibition on ex post facto laws. And that history supports applying *Pulsifer*.

The impetus for both the Constitution's ex post facto prohibition, and the Constitution's prohibitions on Bills of Attainder stems from English practices during the reign of the Stuart monarchs. *See* U.S. Const. art. I, § 9, cl. 3; U.S. Const. art. I, § 10, cl. 1. During this era, Parliament regularly criminalized previously legal behavior retroactively. The most prominent example arose during the prelude to the English Civil War—the impeachment trial of Thomas Wentworth, the 1st Earl of Strafford in 1641. *See* PETER ACKROYD, REBELLION: THE HISTORY OF ENGLAND FROM JAMES I TO THE GLORIOUS REVOLUTION 209 (2015). English Parliament tried to impeach Strafford on flimsy charges to remove one of King Charles I's primary allies from office. *Id.* When it was clear the impeachment charges would fail, Parliament instead passed a Bill of Attainder declaring Strafford's actions retroactively illegal and sentenced him to death. *Id.* at 210–14. Strafford was executed. *Id.* at 213–14.

The events surrounding the English Civil War greatly influenced the Founders in constitutional drafting. For example, Alexander Hamilton, writing as Publius, explained that "[t]he creation of crimes after the commission of the fact, or, in other words, the subjecting of men to punishment for things which, when they were done, were breaches of no law, and the practice of arbitrary imprisonments, have been, in all ages, the favorite and most formidable instruments of tyranny." THE FEDERALIST NO. 84 (Alexander Hamilton). Quoting Sir William Blackstone, Hamilton explained that retroactively punishing previously licit behavior is "a more dangerous engine of arbitrary government" than any other "notorious an act of despotism." *Id.* (cleaned up) (citation omitted). Certain types of retroactive action by the government are thus anathema to the Constitution. *Id.*

But the Constitution does not deal with this problem by circumscribing all retroactive action by the government. The Constitution's restricts retroactive legislative and executive action but treats judicial action differently. Ordinarily, the legislative power is "the power to adopt generally applicable rules of conduct governing future actions by private persons—the power to prescribe the rules by which the duties and rights of every citizen are to be regulated, or the power to prescribe general rules for the government of society." *Gundy v. United States*, 588 U.S. 128, 153 (2019) (Gorsuch, J., dissenting) (cleaned up). So the legislative power is ordinarily prospective. *Id.* And the executive power is "essentially a grant of the power to execute the laws," meaning it too is ordinarily prospective since it bootstraps itself to the legislative power. *Buckley v. Valeo*, 424 U.S. 1, 135 (1976). By contrast, the judicial power is the power "to say what the law is," meaning it is ordinarily retroactive as it only interprets statutory or Constitutional text as it exists rather than creating new law. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803).

When analyzing retroactivity, courts must thus carefully consider which clause of the constitution that protects against retroactive effects is implicated, and what type of action—legislative, executive, or judicial—is creating such a retroactive effect. This analysis requires considering the history of the clauses of the Constitution that protect against retroactivity.

The most obvious source of constitutional protection against retroactivity is the Ex Post Facto Clause. *See* U.S. Const. art I., § 9, cl. 3. During the Constitutional Convention, the Framers debated the scope of that clause (i.e., whether it would apply to government action outside of retroactive criminal laws passed by Congress). *See* Daniel

Troy, *Ex Post Facto*, *in* THE HERITAGE GUIDE TO THE
CONSTITUTION 204 (2d ed. 2014).

The Supreme Court clarified the scope of the Ex Post
Facto Clause in one of its earliest cases—*Calder v. Bull*, 3
U.S. 386, 390 (1798).[1]  Justice Samuel Chase, writing for the
Court, explained that the clause covered only four scenarios:
First, "Every law that makes an action, done before the
passing of the law and which was innocent when done,
criminal; and punishes such action." *Id.*  Second, "Every law
that aggravates a crime, or makes it greater than it was, when
committed."  *Id.*   Third, "Every law that changes the
punishment, and inflicts a greater punishment, than the law
annexed to the crime, when committed." *Id.*  Fourth, "Every
law that alters the legal rules of evidence, and receives less,
or different, testimony, than the law required at the time of
commission of the offence, in order to convict the offender."
*Id.*  So the Ex Post Facto Clause does not protect against
government action that is not a law (i.e., a judicial decision),
nor does it protect against Congress enacting retroactive civil
laws, or even retroactive criminal laws outside *Calder*'s four
enumerated categories.  *Id.* at 390–91.

---

[1] Justice Thomas has questioned whether *Calder* was rightly decided.
*See E. Enters. v. Apfel*, 524 U.S. 498, 538–39 (1998) (Thomas, J.,
concurring).  He has also argued that cases subsequent to *Calder* have
misinterpreted it. *See Ellingburg v. United States*, No. 24-482, 2026 WL
135982, at *4 (U.S. Jan. 20, 2026) (Thomas, J., concurring).  Under
Justice Thomas's proposed approach, the Ex Post Facto Clause is
implicated under *Calder* anytime a law or agency action involves a
"public wrong" (i.e. creates an injury against the sovereign as opposed
to individuals in their private capacity) whether the law was criminal or
civil.  *Id.* at 8–12.  But as a lower court, we faithfully apply *Calder* and
its progeny, *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023),
and even under Justice Thomas's views, the clause would extend only to
laws passed by Congress and agency action, not judicial action.

But the Founders also realized that our legal system needed to protect against retroactivity when the Ex Post Facto Clause was not implicated to protect behavior vast swathes of society had understood as legal, relied upon, and had no notice prior to retroactive state action. For example, Thomas Jefferson explained that the Ex Post Facto Clause bars retroactive application "in criminal cases only" even though ex post facto laws "are equally unjust in civil as in criminal cases and the omission of a caution which would have been right, does not justify the doing [of] what is wrong." Thomas Jefferson, *Thomas Jefferson to Isaac McPherson*, FOUNDERS ONLINE (Aug. 13, 1813), https://founders.archives.gov/documents/Jefferson/03-06-02-0322.

Courts have heeded Jefferson's warning and crafted constitutional doctrines to protect against retroactivity outside the formal protection of the Ex Post Facto Clause through the due process clauses of the Fifth and Fourteenth Amendments. *Rogers*, 532 U.S. at 456–57; U.S. Const. amend. V; U.S. Const. amend. XIV, § 1. And that protects against retroactivity in two ways. First, when Congress passes laws, or the executive enacts executive orders, "prospectivity remains the appropriate default rule." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272 (1994). And even when that default rule cannot be applied, the "Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation," executive orders, or even judicial action. *Id.* at 266. "[A] justification sufficient to validate . . . prospective application under the Clause may not suffice to warrant [] retroactive application." *Id.* (cleaned up). But "[t]he Constitution's restrictions, of course, are of limited scope[,]" meaning "[a]bsent a violation of [the due process right to fair notice], the potential unfairness of retroactive [government action] is

not a sufficient reason for a court to fail" to apply changes in precedent in cases on direct appeal. *Id.* at 267 (cleaned up).

At its core, the due process right to fair notice addresses "the unfairness of imposing new burdens on persons after the fact." *Id.* at 270. It ensures that the government is not "free to change the law retroactively based on shifting political winds, [because] it could use that power to punish politically disfavored groups or individuals for conduct they can no longer alter." *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1146 (10th Cir. 2016) (Opinion of Gorsuch, J.). But absent any such concerns—as in this case—a federal court has an unflagging obligation to exercise the judicial power in its normal mode (i.e., retroactively). *Cf. Marbury*, 5 U.S. at 177 (the judiciary is required "to say what the law is[,]" implying it doesn't ordinarily create new law moving forward); *see also* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy,* 104 VA. L. REV. 933, 996 (2018) (explaining how judicial decisionmaking is, by its nature, retroactive).

Engstrom's case falls far outside the ambit of protection under first principles that led federal courts to cognize a due process right to fair notice. And our precedent confirms that.

b

Applying *Pulsifer* here does not violate Engstrom's due process right. The application of subsequent judicial decisions on direct appeal does not violate a defendant's due process when, as here, *Pulsifer*'s interpretation of § 3553(f)(1) was foreseeable. Engstrom argues that under *Bouie v. City of Columbia*, 378 U.S. 347 (1964), and its progeny, applying *Pulsifer* would violate his due process right. Engstrom is wrong.

*Bouie* reviewed the South Carolina Supreme Court's decision to retroactively apply its state's criminal trespass statute to its petitioners. *Id.* at 348–50. That trespass statute prohibited "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry." *Id.* at 349.

The South Carolina Supreme Court had construed the statute to extend to patrons of a drug store who had been given no notice barring them from entering the store but refused to leave when asked.**²** *Id.* at 349–50. Prior to *Bouie*, "cases construing the statute had uniformly held that conviction under the statute required proof of notice before entry." *Rogers*, 532 U.S. at 457 (discussing *Bouie*). No case before *Bouie* gave "the slightest indication that [the statute's] requirement could be satisfied by proof of the different act of remaining on the land after being told to leave." 378 U.S. at 357.

The Supreme Court held that "the South Carolina Supreme Court, in applying its new construction of the statute . . . deprived petitioners of rights guaranteed to them by the Due Process Clause." *Id.* at 362. The Court explained that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law" and thus violates a petitioner's due process right to fair notice. *Id.* at 353.

*Bouie* does not apply here. It applies only when subsequent judicial interpretations of a statute are truly unforeseeable by the parties. No court had reached or applied the statutory construction the South Carolina

---

² *Bouie* arose out of a sit-in demonstration where the store's restaurant was segregated and the trespass statute was used against African Americans denied service. 378 U.S. at 361.

Supreme Court did, and that result was truly unexpected. *See id.* at 357. "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). And where other "jurisdictions had already reasonably construed identical statutory language to apply [to a defendant's act]," those decisions gave a defendant fair notice that his behavior would be criminalized under the statute. *Rose v. Locke*, 423 U.S. 48, 53 (1975).

When Engstrom was sentenced, and *Pulsifer* decided soon after, the Ninth Circuit's abrogated position in *Lopez* was already a minority position. *See Lopez*, 58 F.4th 1108. This is a far cry from *Bouie* where no court had ever adopted the novel statutory construction (and had in fact rejected it in every case before *Bouie*). 378 U.S. at 357. Here the Fifth, Sixth, Seventh and Eighth Circuits all rendered opinions that gave Engstrom notice that the disjunctive construction of the provision may have been correct two years prior to his sentencing hearing. *See United States v. Pulsifer*, 39 F.4th 1018 (8th Cir. 2022); *United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022); *United States v. Haynes*, 55 F.4th 1075 (6th Cir. 2022); *United States v. Pace*, 48 F.4th 741 (7th Cir. 2022). Thus, applying *Pulsifer* does not defy *Bouie*. *See United States v. Newman*, 203 F.3d 700, 702–03 (9th Cir. 2000) (explaining that a circuit split renders the alternate interpretation "reasonably foreseeable").

Further, *Bouie* does not apply to cases that do not enlarge the scope of criminal liability. Where "the judicial decision at issue" (i.e., *Pulsifer*) "does not enlarge the scope of criminal liability[,]" but rather "interprets a federal statute concerning the calculation of the length of a term of

imprisonment without reference to the issue of the defendant's criminal liability[,]" "the due process concerns raised by *Bouie* are inapplicable." *Newman*, 203 F.3d at 702–03; *see also United States v. Ruiz*, 935 F.2d 1033, 1035–36 (9th Cir. 1991); *United States v. Ricardo*, 78 F.3d 1411, 1417 (9th Cir. 1996).

We thus properly consider *Pulsifer* when reviewing the district court's order. *See Macias*, 789 F.3d at 1019 n.4; *Henderson*, 568 U.S. at 269. And under *Pulsifer*, Engstrom is ineligible for safety valve relief. 601 U.S. at 153.

c

Finally, Engstrom argues that even if *Pulsifer* applies, the government cannot satisfy its burden to show that this error warrants reversal under the third and fourth prongs of plain error review. These arguments lack merit.

Plain error review does not solely protect the substantial rights of a criminal defendant, it also protects the government. "The government's substantial rights may be affected when a defendant receives an inappropriate sentence," and all the government must show is "a reasonable probability that [the defendant] would have received a different sentence but for the district court's error." *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 741 (9th Cir. 2009).

The government meets that test. But for the error created by not applying *Pulsifer* to this case, Engstrom would not have been safety valve eligible. He would have received a sentence at or above the statutory mandatory minimum of 60 months. Instead, Engstrom only received a sentence of 46 months—well below the mandatory minimum. Thus, the government satisfies the third prong of plain error review.

The government also satisfies the fourth prong. It has shown that "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Walter-Eze*, 869 F.3d at 911. The type of sentencing disparity seen here automatically satisfies this prong.

When a "district judge would have given a different sentence but for [his] error," such a situation intrinsically "undermine[s] the fairness and integrity of judicial proceedings." *Gonzalez-Zotelo*, 556 F.3d at 741. In those cases, the third and fourth prongs of plain error review collapse into one. If the government meets its burden under the third prong, it simultaneously demonstrates that the sentencing error undermines "the fairness and integrity of [the] judicial proceedings." *Id.* Thus, the government has met its burden under plain error review.

V

The district court erred by concluding that Engstrom was eligible for safety valve relief under § 3553(f). The "appropriate remedy for a sentence imposed in excess of the sentencing court's authority is to vacate the entire sentence and remand for resentencing." *United States v. Blue Mountain Bottling Co. of Walla Walla*, 929 F.2d 526, 529 (9th Cir. 1991). Thus, we reverse the district court, vacate Engstrom's sentence, and remand to the district court for resentencing consistent with this opinion.

**REVERSED, VACATED, AND REMANDED.**